[No. 7697. Decided May 11, 1909.]

FRITZ PREAS, *Respondent,* v. THOMAS W. VOLLINTINE, *Appellant.*[1]

BILLS AND NOTES—DISHONORED DRAFT—DEFENSES—WANT OF CON-SIDERATION—EVIDENCE—TO VARY WRITING. It is a good defense to an action upon a dishonored draft, brought by the drawee against the drawer, that plaintiff had falsely represented to defendant that the proceeds of certain mining claims in which the parties had been interested and which now belonged to plaintiff had been deposited in bank to the credit of the defendant, and that defendant, relying thereon, and as an accommodation to plaintiff, had, without consideration, drawn the draft on the bank to enable plaintiff to draw down the funds; and evidence of such fact does not vary the written instrument, but is admissible to show want of consideration, within Laws 1899, p. 340, § 28, making the same a matter of defense.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 18, 1908, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on a draft. Reversed.

*Shank & Smith,* for appellant.

*John P. Hartman* and *F. C. Kapp,* for respondent.

DUNBAR, J.—Plaintiff brought this action against the defendant as drawer, upon the following dishonored draft:

"The Scandinavian American Bank of Seattle.
                    "Seattle, Washington, Aug. 11, 1906.
"$698.00   At sight pay to the order of Fritz Preas six hundred ninety-eight and 00-100 dollars value received and charge the same to account of Thomas W. Vollintine.
To the Miners & Merchants Bank of Alaska. Nome, Alaska."

[1]Reported in 101 Pac. 706.

The plaintiff alleged the drawing of the draft, the presentation, the dishonor of the draft, protest, and notice to the drawer. The answer denied consideration, denied protest and notice; affirmatively alleged that, prior to the date of the draft set out in the complaint, plaintiff and defendant were mutually interested in divers mining claims in Alaska; that as a compromise adjustment of plaintiff's claim, the parties on August 9, 1906, executed a written agreement, in which defendant released and relinquished to plaintiff all right, interest, or claim in and to said mining claims (a copy of this agreement is made a part of the answer) ; that prior to the date of said settlement, plaintiff and defendant had, at plaintiff's suggestion, placed for sale said mining claims in the hands of an agent in Alaska selected by plaintiff; and after said compromise settlement, the defendant was informed by plaintiff that said agent had sold a part of said claims, and had placed in the Miners & Merchants Bank of Alaska, for defendant, as his share of the proceeds of said sale, the sum of $698; that the defendant had no knowledge of said sale and any proceeds and disposition thereof other than the statement of plaintiff; that it was thereupon mutually agreed orally between the plaintiff and defendant, that defendant's share of any proceeds of claims should go to plaintiff, along with the defendant's interest unsold, under the terms of said settlement, and in pursuance of said arrangement and for the sole and only purpose of relinquishing any claims of defendant to plaintiff, and collecting for plaintiff's accommodation the money, if any, deposited for defendant, the draft was signed by defendant. The affirmative matters in the answer were denied by reply. The cause was tried to the court, and it found as facts the principal allegations of the complaint, the drawing of the draft, the presentation and dishonor of the draft, the refusal of the defendant to make good the draft, etc.; and further found that the plaintiff was entitled to a judgment against defendant in the sum claimed, and judgment was entered therefor.

These findings are excepted to by the appellant. The court took the view that the affirmative defense as pleaded did not show want of consideration, but finally admitted some testimony bearing on that question, but refused to allow the appellant to prove under what circumstances the draft was made and the cause of its execution. For the purpose of sustaining the allegations of the affirmative defense, an attempt was made to show that the draft was drawn for the purpose of obtaining the proceeds of the sale of the mining claims in Alaska, which were claimed by the respondent in this case under a former agreement between him and the appellant, and which were conceded to him by the appellant. This testimony was objected to, and the objection sustained. Also the testimony of Mrs. McGill, to the effect that Preas told her that Preston, his agent in Alaska, said that some of these mining claims that he had staked in Mr. Vollintine's name had been sold and the money deposited in Vollintine's name in the Alaska bank. This testimony was stricken out on the motion of the respondent. The testimony offered and refused was no broader than the allegations of the affirmative answer, so that the question determined by the court may be determined here upon the pleadings.

It is the contention of the respondent that paragraph 3 of the affirmative answer, which alleges in brief that, prior to the date of the settlement pleaded, the respondent had notified the appellant that certain of these claims in Alaska had been sold and the money deposited for him there, and that as a matter of accommodation this certificate had been executed and given to the respondent so that he could obtain funds which had been deposited, according to his statement, for the appellant, and which funds it was conceded the appellant was entitled to, is an attempt to vary the terms of a written contract. But we are unable to see that there is any attempt here whatever to vary the terms of the contract sued upon, viz., the draft. The contract and its terms are conceded. But the attempt is simply to explain circumstances

which, if true, would work a want of consideration; and as between the original contractors, this, it seems to us, was a proper allegation and would sustain proper proof. Pierce's Code, § 6596 (Laws 1899, p. 340, § 28), provides that:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto* . . . ."

And in *Johnson County Sav. Bank v. Rapp*, 47 Wash. 30, 91 Pac. 382, this question was directly decided by this court. Said the court:

"It is next assigned that the court erred in admitting, over the objection of appellant, evidence relating to the representations of the traveling salesman of the Puritan Manufacturing Company. But this was a necessary part of the respondent's case. They were obligated to show the condition on which they purchased the goods in order to show a failure of consideration. This evidence was directly in point for that purpose. The written order which the appellant urges represents the entire contract was at best obscure, and subject to interpretation. The interpretation put thereon by the salesman to induce a sale could be properly put in evidence to show a failure of consideration. The testimony of the witness Hoyt as to a similar transaction with the appellant bank was admissible as tending to show knowledge on the part of the bank of the character of the paper they were purchasing from the Puritan Manufacturing Company."

So this allegation in the answer, and the testimony to support it, is a necessary part of the respondent's case, and was directly in point for that purpose; and, as stated in the last proposition just cited, it was also admissible as tending to show knowledge on the part of the respondent in this case of the character of the paper which he received and the extent to which the drawer would be bound by it. It would certainly be exceedingly unjust if the facts set forth in the affirmative defense are true, where representations were made by a party that certain funds are on deposit in a bank for that party and the draft is there for the benefit of the party making the statement, no funds being there, to hold the

drawer responsible to the party who was responsible for the wrongful issuance of the draft.

With this view of the law, the whole question in this case becomes a question of fact, viz., whether the draft was issued under the circumstances and for the reason alleged by the appellant, or whether it was issued in accordance with the testimony of the respondent. We have examined this testimony with care. It is very brief, and while the burden is upon the drawer of the draft to overcome the presumption established by the execution of the draft, it seems to us, notwithstanding the findings made by the honorable judge who tried the case, that that presumption has been clearly overcome in this case. Even on the testimony which the court permitted, this case would have to be reversed, in any event, for the error of the court in refusing the testimony which we have mentioned above. But under the testimony which was admitted, we are satisfied that the testimony of the respondent is not reasonable. Under this contract, which was entered into on August 9, he was entitled to the proceeds of these claims which stood in the name of the respondent. He admits that, shortly after the contract was entered into, he told the appellant that he had been informed by his agent that these claims had been sold, and that the money was deposited in the bank for the appellant. His testimony on other material points is contradicted flatly by the appellant, whose testimony, it seems to us, is reasonable and bears the impress of truth. It is also contradicted by the testimony of Mabel McGill, who stated that she had had a conversation with the respondent, Mr. Preas, who told her that, under the written agreement, he was entitled to those mining claims, referring to the mining claims in Alaska, and was, therefore, entitled to any proceeds that might be derived from them, and that the draft was made for the purpose of obtaining those proceeds. This testimony was objected to and the objection sustained, but it appears in the record and, for the purposes of this case, will be considered here. He admitted

that he had told the appellant that the money was there, and in explanation of that said "that he only had the agent's word for it, but he had confidence in the agent and that if he said it was there, he was sure it was there;" that he did not know that it was in her father's name, but he supposed it was; it was only reasonable to suppose it was in her father's name. When asked the question, "What did he say when you said that all Mr. Vollintine knew was what Mr. Preas told him?" she answered, "He admitted that that was the case." The witness was a daughter of the respondent in this case, but her testimony seems straightforward and reasonable, and was unshaken by cross-examination. Considering all the testimony in the case, we are forced to the conviction that the draft was given merely as a matter of accommodation to the respondent by reason of representations made by the respondent, which representations were not true; that there was, therefore, no consideration whatever for the draft, and the judgment will therefore be reversed with instructions to dismiss the action.

RUDKIN, C. J., FULLERTON, CROW, and MOUNT, JJ., concur.