# E. WAYLAND SHAFFER

*vs.*

# GEORGE M. BOND.

*Promissory notes: suit on by payee against maker; total want of consideration; burden of proof. Evidence: bank checks; stubs.*

In case of suit between the payee and maker, the burden of proof is, in general, upon the maker to show a want of consideration. p. 661

In such a suit, if the defendant, while admitting that he signed the note, attempts to escape liability by alleging fraud, or what is equivalent to it, in order to show want of consideration, the burden of establishing it, by a preponderance of proof, is upon him, and continues to the end of the case. pp. 662-663

Cases where facts may be peculiarly within the knowledge of the plaintiff may make an exception to the rule. p. 663

In general, it is no objection to the admissibility of checks in evidence that the stubs, from which they were detached, were not offered with them. p. 652

*Decided January 10th, 1917.*

Appeal from the Circuit Court for Prince George's County. (BEALL and CAMALIER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Craig McLanahan* (with *France, McLanahan & Rouzer,* and *Frederick Dallam,* on the brief), for the appellant.

*T. Howard Duckett* and *Ogle Marbury* (with whom was *Marion Duckett* on the brief), for the appellee.

Boyd, C. J., delivered the opinion of the Court.

George M. Bond, the appellee, sued E. Wayland Shaffer, the appellant, on the common counts and a special one on a promissory note purporting to be dated January 2nd, 1915, payable to the order of the appellee on demand for $4,250.00, with interest, at the Citizens' National Bank of Laurel, Md. The defendant pleaded the general issue pleas of never promised as alleged and never indebted as alleged; and issue having been joined, a trial was had, resulting in a verdict in favor of the plaintiff for $4,578.30, being the amount of the note with interest. From a judgment entered on that verdict this appeal was taken. There are seven bills of exception in the record—the first six presenting rulings on the admissibility of evidence, and the seventh embracing the rulings on the prayers. The plaintiff offered none, but the defendant offered five prayers—the first and fourth of which were granted with amendments made by the Court, the second was conceded, and the third and fifth were rejected.

Although that was not necessary, as the defendant had not by his pleadings denied the execution of the note, as required by sub-section 108 of section 24 of Article 75 of the Code, the plaintiff proved the signature of the defendant and offered the note in evidence. He also proved demand on the defendant for payment. The plaintiff having rested his case, the defendant went upon the stand. He denied signing this note in January, 1915, admitted his signature, but contended that in December, 1913, he wanted to borrow $25.00 from the plaintiff, who said he did not have the money, but thought he could get it on his note; that defendant told him if he could not get $25 to get $20, and he signed his name to a blank note for the plaintiff to get the money on it; that the plaintiff started out to get it and later the plaintiff told him he could not get the money, and he then asked for the note he had signed in blank, but plaintiff claimed he had lost or mislaid it; that he called for it a number of times, but plaintiff said he had not been able to find it; that being anxious

about it he took his wife with him to plaintiff's office in February, 1914, explained the transaction to her in the presence of the plaintiff, and the latter, after again looking in his safe, said he could not find it, but told him if he came across it he would return it, and assured him that he would never have any trouble about it. . He said that he then went away satisfied, and never heard anything from the plaintiff about any note from that time until about the middle of June, 1915, when he received a letter from him telling him he had deposited his note for $4,250.00 in bank, and requested him to attend to it. He swore that he had never given the plaintiff any note whatever excepting the one in blank. It was admitted that the body of the note sued on was in Mr. Bond's handwriting, and that the signature was that of the defendant. The theory of the defendant was that the note sued on was the one he had signed in blank to enable the plaintiff to get for him the $25 or $20, and that he owed plaintiff nothing in January, 1915. The evidence of his wife tended to corroborate him as to the interview in February, 1914.

The plaintiff testified that the note sued on was given for loans made by him to the defendant at various times from the year 1907 until some time in January, 1914; that the defendant was about seventeen years of age when the loans began, and at first he would take an order from the defendant on his guardian when he loaned him money, and then when he loaned him more he would destroy that and take another; that after defendant became of age he would take a note for money due him up to that time, and when he made him another loan he would take a new note for the amount then due and destroy the other one. He swore that the note sued on was for money loaned before and after the defendant became of age; that he had had another note for the same amount, but he wanted one payable on demand, and defendant agreed to come to his office on January 2nd, 1915, and sign a new note; that he did not come then, but did about

the middle of January, when he signed this note, which plaintiff said he drew and dated on January 2nd, 1915, the time defendant promised to come to his office. The testimony of the plaintiff's sister tended to corroborate him as to the signing of the note on or about January 15th, 1915, and the destruction of the one plaintiff previously had. His wife also testified as to a loan made by the plaintiff to the defendant for about $1,000 in June, 1908.

The first five exceptions were taken to the action of the Court in permitting the plaintiff to ask the defendant on cross-examination questions which were objected to. Without deeming it necessary to repeat them or to refer to them in detail, we are satisfied that there was no reversible error in any of these exceptions. In the first place, none of them seemed to have been answered, unless what is stated in the beginning of the sixth bill of exceptions was an answer to the question in the fifth. The object in asking them seems to have been to show the intimate relations which existed between them, and to have the jury infer that the defendant would probably want money, as reflecting on the evidence of the defendant, in which he had positively denied borrowing from the plaintiff, but to the only one which can be claimed to have been answered, the answer was calculated to injure the plaintiff more than the defendant, if it had any effect. There was nothing in that answer, or either of the questions, which could be held to be sufficient grounds for reversing a judgment.

The plaintiff handed to the defendant, while still under cross-examination, eleven checks drawn by the plaintiff to the order of "Myself," endorsed by him, and then by the defendant, who admitted his signatures, but explained that the plaintiff would send him to bank to get checks cashed for him and would draw them in that way; that the bank would require his endorsement to show who had received the money, but he denied getting any of the money on them for his own use. The plaintiff offered the checks in evidence, with the

proffer to follow them up by proving that they were a part of the consideration of the note. The defendant objected on the ground that there was no connection shown between them and the note, and because they showed upon their face mutilation. The plaintiff's attorney explained that the checks had been pasted on stubs, and that in tearing them off Mr. Bond's signature had been a little mutilated on some of them, but he admitted that his endorsements were on them. They were then admitted in evidence, after the assurance that the evidence would be followed up as stated above. There is no force in the objection that the stubs were not offered with them, as they were not admissible on behalf of the plaintiff, if there were any entries on them, and later Mr. Bond testified that there were no such entries. As the defendant called upon the plaintiff to produce the stubs, his failure to do so might have prejudiced the plaintiff before the jury, but we are not aware of any authority or practice which would have justified the Court in excluding the checks because the stubs were not introduced with them. The testimony already given by the defendant made the checks relevant, in connection with the proffer of the plaintiff. If the plaintiff failed to connect them with the note, according to the proffer, the proper course to have pursued was to have moved that the checks be excluded, unless they became in some other way relevant. There was, then, no error in admitting them.

This brings us to the rulings on the prayers. As will be seen from what we have said above, the evidence of the two parties was very conflicting. There was no middle ground or room for claim of mistake as to the important questions of fact in controversy. The defendant's first prayer as offered was as follows: "The defendant prays the Court to instruct the jury that if the jury find from the evidence in the case that there was no consideration moving from the plaintiff to the defendant for the note, which is the cause of the action in this case, then their verdict must be for the defendant."

The Court modified that by adding to it: "but the burden of the proof is on the defendant to show want of consideration," and granted that prayer as modified, to which modification an exception was taken. The defendant's fifth prayer, which was rejected, asked the Court "to instruct the jury that under the pleadings and evidence in this case, the burden of the proof is upon the plaintiff to show that he gave value for the note the cause of action herein sued on."

Those rulings present the important question in the case—namely, upon which side was the burden in reference to the alleged want of consideration, under the circumstances. The Negotiable Instruments Act was passed in this State in 1898—being Chapter 119 of the Acts of Assembly of that year, and now included in Article 13 of the Annotated Code. Section 43 of that Article provides that: "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have been a party thereto for value"; and section 47 is: "Absence or failure of consideration is a matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise." See also section 77.

Section 33 of that Article provides that: "Where the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who becomes a party thereto prior to its completion, it must be filled up strictly in acordance with the authority given, and within a reasonable time," etc.

The second prayer, which was conceded, instructed the jury that "if the jury shall find that said note was filled in for the sum of $4,250 by the plaintiff or other persons other than the defendant, without the knowledge of the defendant, and without the authority of the defendant to so fill in the same, the verdict of the jury must be for the defendant." The appellee contends that as the conceded prayer covered the defense made by the appellant, he could only have obtained a verdict under it, and hence, even if there was error in the action of the Court as to the first and fifth prayers, concerning the burden as to the want of consideration, the defendant could not have been injured, and therefore it can not be said that there was any reversible error. But manifestly that is not correct, for the defendant had the right to ask instructions on both theories of the case. The plaintiff did not contend that he was authorized to fill up a note which had been signed by the defendant in blank—on the contrary, he denied that this paper had been left with him signed in blank, and claimed that the defendant signed it after it had been filled up as it now is. If the defendant was right in his contention, then there was no consideration for this note, and, as the plaintiff claimed there was, the defendant had the right to ask the Court to instruct the jury as to the burden of proof.

The appellant cited *McCosker* v. *Bank,* 84 Md. 292, to show that where there is fraud or illegality in the inception of the note, the burden of proof is upon the holder to show that he is a *bona fide* holder for value, but he did not state the reason for such ruling given by the Court. That was an action by the endorsees against the makers of a note, who pleaded the general issue and that the note was procured by fraud, of which the plaintiffs had knowledge when it was endorsed to them. The Court amended a prayer offered by the plaintiffs as to the alleged fraud by adding, "and the burden of proof is upon the plaintiffs to show that they *had no knowledge of the fraud."* After stating the law of this State

as to the legal presumption that the plaintiffs became holders for value before maturity, etc., the Court said: "But if the defendant shows by such proof as may be properly left to the jury to consider that the instrument was procured by fraud, or was fraudulent in its inception, or that the consideration was illegal, or that it had been lost or stolen before it came to the possession of the holder, the burden of proof is changed, and it is then incumbent upon the plaintiff to show that he acquired the note *bona fide* for value, in the usual course of business, before maturity," etc.    The Court then added: "This is a well established rule as applicable to negotiable instruments; and it is said to be wise and salutary in the protection that it affords.    It proceeds upon the presumption that the person who has been guilty of the fraud or illegality in obtaining the instrument would dispose of it, and would place it in the hands of another person to sue upon it; and *it is because of such presumption* that the proof of fraud, illegality or loss, casts upon the holder the burden of showing that he is a *bona fide* holder for value, or under what circumstances, and for what value he became the holder of the note."

That case cited *Totten* v. *Bucy,* 57 Md. 446, 452, and other cases where the rule had been announced, in none of which, however, was the suit by a payee or original party to a note.    The appellant referred to the definition of the word "holder," as given in section 14 of Article 13, that it "means the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof"; but when *McClosker* v. *Banks* and the other cases referred to, in which that term was used, were decided, the Act was not in force in this State and the word was used in connection with endorsees. Moreover, the reason for the rule, as quoted above, does not apply to an original party to a suit—the *onus* put on the plaintiff in such case is only to show that he is a *bona fide* holder for value, etc.—not that there was no fraud, nor that the consideration was illegal in the inception of the note, etc.

It is only when fraud is shown on the part of the payee or someone other than himself that the endorsee is called upon to prove that he was not aware of it in that class of cases, and then by reason of the presumption which is raised as stated above. There is therefore nothing in the case of *Mc-Cosker* v. *Banks* which aids us in determining the question presented by the first and fifth prayers as to the burden of proof.

The only case in Maryland which it is claimed has directly passed on the question of burden of proof when there is an alleged want of consideration is *Eckels* v. *Cornell Economizer Co.,* 119 Md. 107. The two notes there sued on represented the contract price, with interest added, of two "Cornell Patent Economizers and Smoke Consumers" with which the plaintiff had equipped two boilers in defendant's plant, under the terms of a written contract. That contract contained four guarantees, one of which was to effect a saving of not less than 15%, or a proportional increase, in boiler capacity, etc., and was the breach relied on. The plaintiff proved the execution and delivery of the two notes; that nothing had been paid on either, and on cross-examination of the witness, the treasurer of plaintiff, by whom the notes were proved, the defendant showed the consideration of the notes to be the installation of the plaintiff's device under the contract mentioned, which it produced and put in evidence. There the plaintiff rested, and the defendant then offered evidence tending to support the defense of failure to produce the guaranteed saving of 15%. In discussing the plaintiff's prayers, JUDGE PEARCE said: "The fifth prayer instructed the jury that the burden of proof was on the defendant to show there was *a* failure of consideration. This is the general doctrine, 8 *Cyc.* 225, and the rule of this State, *Ingersoll* v. *Martin,* 58 Md. 67." (The word *no* instead of *a* appears in the opinion, but manifestly "a" was intended.) Again he said: "The defendant's ninth prayer asked that the jury be instructed that the giving of the notes in this case was not a waiver of

the guarantee, and that the burden of proof was upon the plaintiff to show that the device fulfilled the guarantee. From what we have said in passing upon the plaintiff's fifth prayer, and on the defendant's third prayer, this prayer was properly rejected."

In 8 *Cyc.* 225, referred to by JUDGE PEARCE, we find the following statement, being in the article on commercial papers: "*Want, Failure, or Illegality of Consideration.*—The defendant who sets up any of the aforegoing defenses has the burden of proving the want, failure or illegality of consideration. The presumption of a valid consideration must be met by proof, and mere denial by averment in the answer is in general not sufficient to rebut the presumption." In 8 *C. J.,* section 1299, page 994, it is said: "It is a general rule, supported by a multitude of decisions, that the burden of proof is on defendant to establish a defense of want, failure or illegality of consideration. These decisions, while for the most part apparently without qualification on their face, are subject to explanation, at least according to the rules laid down in many jurisdictions, by adding that what is meant is that defendant must produce some evidence to overcome the presumption of consideration arising from the production of the instrument, in order to shift to plaintiff the necessity for proving facts relating to the consideration. In other words, the rule, at least in most of the States, is that although a bill or a note imports in itself a consideration, yet when the evidence has been introduced to rebut the presumption of consideration the burden shifts to plaintiff to show by a preponderance of the evidence that there was a consideration; and this is so even where the instrument on its face recites a consideration as by the use of the words 'value received,' but it has been held that the rule does not apply to a defense of a failure of consideration." In 3 *R. C. L.* 928, section 124, the author of that article holds that the burden is on the plaintiff, although apparently his opinion is largely based on decisions governed by the pleadings, and refers to cases where

the consideration had been alleged or denied in the pleadings. See also 4 *Am. & Eng. Ency. of Law,* 200, and appellant also cited 1 *Daniels on Neg. In.* (6th ed.) section 164.

It must be admitted that 8 *C. J.* 994, 3 *R. C. L.* 928, and 4 *Am. & Eng. Ency. of Law,* 200, cited above, seem to adopt the rule contended for by the appellant, but it will be observed that 8 *C. J.* begins by saying that, "It is the general rule, supported by a multitude of decisions, that the burden is on defendant to establish a defense of *want, failure,* or *illegality* of consideration," and there are cited in the notes what may very properly be called "a multitude of decisions." The author concludes that "at least according to the rules laid down in many jurisdictions," it is only meant to say that the defendant is called upon to produce some evidence to overcome the presumption of consideration arising from the production of the instrument, and that when that is done the burden shifts to the plaintiff. While that is undoubtedly correct as to a number of courts, it is by no means so with all of those cited in the notes. But there seems to be no distinction made in most of the cases taking that position between a *want* of consideration and a *failure* of consideration. The only case cited in the note for the statement, "but it has been held that the rule does not apply to a defense of a failure of consideration," is *Ginn* v. *Dolan,* 81 Ohio St. 121, 18 *Ann. Cas.* 204. We have found one or two others, but most of them make no such distinction, and some decline to make it. In 3 *R. C. L.* 928, it is said: "Nevertheless in a number of jurisdictions it is asserted to be the rule that the defense of a want of consideration for a bill or note is an affirmative defense, and that as a bill or note imports on its face a valuable consideration, the burden of establishing that there was no consideration falls upon the party pleading that defense— or at any rate when the paper, in accordance with commercial usage, specifies a consideration."

It is also true that in a number of the States where there are courts of the highest standing, the rule contended for by

the appellant has been adopted. Apparently, however, at least some of them have been influenced by the pleadings. It was said in 3 *R. C. L., supra*: "Yet when consideration is denied in the answer, there is an issue made upon that point, on which the plaintiff has the affirmative"; and again, "There being other evidence on both sides, which has a bearing upon the question of consideration, the burden remains upon the plaintiff upon all the evidence produced, including the note itself, and the presumption that arises from it, to establish what he, in the declaration in his writ, has necessarily alleged." Then quite a number of the decisions relied on were suits by endorsees which are in accord with *McCosker* v. *Banks,* 84 Md. 294, referred to at length above. A number of them were controlled by the facts of the particular cases, for example, where there were such confidential relations existing between the parties as to place the burden on the plaintiff throughout the case. Under our practice the plaintiff is not even required to allege consideration in the *narr.* The form given in the Code as sufficient, in a suit on a promissory note, is, "That the defendant on the ———— day of ———— by his promissory note, now overdue, promised to pay to the plaintiff $———— sixty days after date, but did not pay the same." As we have seen, there are simply the general issue pleas in this case—under which it is true a want or failure of consideration can be proven. In some of the cases cited, contracts other than negotiable instruments were the causes of action.

There are too many cases cited in the notes to *Corpus Juris* and in the note to *Ginn* v. *Dolan,* as reported in 18 *Ann. Cases,* 205, to permit a discussion of them in detail. It may be well to add that a later decision in Pennsylvania than those in the note in 18 *Ann. Cases* has adopted the view contended for by the appellant, *First Nat. Bk. of Bangor* v. *Paff,* 240 Pa. 513, 87 At. 841. *Piner* v. *Brittain,* 165 N. C. 401, 81 S. E. 462, has adopted the appellee's views, and hence the case of *Campbell* v. *McCormac,* 90 N. C. 491, can

not be said to sustain the appellant, as some authorities hold. The case of *Nicholson v. Neary,* 77 Wash. 294, 137 Pac. 492, cited by appellant, does not sustain his contention, but on the contrary, *McKenzie* v. *Oregon Imp. Co.,* 5 Wash. 409, 31 Pac. 748, and *Preas v. Vollintine,* 53 Wash. 137, 101 Pac. 706, are very emphatic in favor of the appellee's contention, and criticise some of the cases holding the opposite view. The cases in the note in 18 *An. Cases,* cited as sustaining the appellee's position, are from the reports of Alabama, Arkansas, California, District of Columbia, George, Illinois, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, New York, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Texas and Washington. To those from Illinois cited in the note may be added *McMichen* v. *Safford,* 197 Ill. 540, 64 N. E. 540; those in Ohio are distinguished in or over-ruled by *Ginn v. Dolan.* In addition to the cases cited in that note from Alabama, see *Gales* v. *Morton Hardware Co.,* 146 Ala. 692, 40 So. 509; from Kanass, see *Bank of Topeka* v. *Nelson,* 58 Kan. 815, 49 Pac. 155; from Texas, *Masterson v. Heitmann & Co.,* 38 Tex. Civ. App. 476, 87 S. W. 27. Also see 2 *Greenleaf on Evidence* (10th ed.), section 172; *Bailey's Onus Probandi,* 221, 225. Apparently, the majority of courts in this country have adopted the view contended for by the appellee, but it would prolong this opinion (already longer than we intended) to an unreasonable extent, if we attempted to call attention to all of the cases cited, which, adopting the view of the one side or the other, can be distinguished or shown not to be applicable to the precise questions before us. Some of those we have cited may be subject to that criticism.

So far as the defense of failure of consideration is concerned, *Eckel's case, supra,* is conclusive, and it is in accord with what we understand to be the practice in this State. It does not seem to us that there can be any valid reason for holding the contrary view, under our practice. It is an affirmative defense, and must be proven by the defendant and sus-

tained by him throughout, if he relies on it. The case now before us is a very peculiar one, for, although the defendant's first and fifth prayers refer to a *want of consideration,* he attempts to prove that by evidence in reference to his signature to a blank note. If that evidence is true, there was a gross fraud on the part of the plaintiff, and that being so, the defendant was not only called upon to establish the allegation by clear proof, but the burden was on him throughout, unless an exception is to be made to the general rule in reference to fraud, and it is to be held that if the fraud attempted to be proven is intended to show want of consideration to a note, then the burden is not on the defendant, but on the plaintiff. We can not give our assent to that departure from a well established rule, even if there be authorities elsewhere to sustain it, for call it what we may, it was an unmitigated fraud, not to speak of it as a crime, if the defendant's theory about this note is correct, and hence not only the authorities, but simple justice should place the burden on him to establish by a preponderance of the evidence such a charge as the defendant makes.

The general rule just referred to is well stated in 20 *Cyc.* 108: "Fraud is never presumed, but must be affirmatively proved. On the contrary, the presumption, if any, is in favor of innocence; and according to general principles elsewhere discussed (referring to 16 *Cyc.* 928, *et seq.*), the burden falls on him who asserts fraud, whether he be plaintiff or defendant, to establish it by proving every material element of the cause of action by a preponderance of evidence." It is true that placing the burden on one who thus asserts fraud may be the means of the opposite party obtaining an unrighteous verdict—where there is oath against oath—but while such a result must be regretted, the defeat of an innocent party, falsely accused of such fraud, by reason of the burden being on him, would be deplorable, as he would not only lose his money, but his reputation might be seriously injured. If, then, the defendant in a suit on a negotiable

promissory note, which is admitted to bear his signature, attempts to escape payment of it by alleging fraud, or what is equivalent to fraud without the use of the term, in order to show want of consideration for the note, he ought not to complain if he has the burden of establishing it by a preponderance of proof—such burden continuing to the end of the case. This is enough to indicate that we must hold that the defendant's third prayer was properly rejected, because it asked the Court to instruct the jury that if they found that the note was signed by the defendant, and delivered in blank to the plaintiff, and that he or someone in his behalf filled in the note for the sum of $4,250.00, "under the evidence in this case the burden of proof is upon the plaintiff to show that the note was so filled in with the authority and consent of the defendant." Other objections to that prayer might be mentioned, but the above is sufficient. As we have seen, the plaintiff did not claim that the note was "filled in" with the authority and consent of the defendant, but he denied that it was delivered to him in blank, and to place such a burden on him "under the evidence in this case" could not be justified by any well considered authority that we are aware of.

Returning to the first and fifth prayers, we find that the want of consideration is based on practically the same evidence. It is true the defendant denied that he owed the plaintiff anything, but in order to prove that statement he was compelled to explain how his signature, which was admitted, got on the note sued on, and hence the alleged fraud of the plaintiff was involved in it. It would therefore be utterly illogical to hold that the burden could not be placed on the plaintiff under the third prayer, but could be under the first and fifth. But regardless of that, we are of the opinion that the better rule is to hold that the burden is generally on the maker to show a want of consideration to a promissory note in a suit between him and the payee. There may be circumstances which justify an exception to such a

general rule. Sometimes the facts may be so peculiarly within the control of the plaintiff as to place the burden on him, or there may be some other reason for making an exception, but it seems to us that it is the wiser rule to adopt, in order to make negotiable instruments effective and of the value they are supposed to be. When the maker signs a negotiable instrument, it is presumed to be for value, and, without meaning that that is necessary, this one states on its face it is for "value received." In business transactions notes are often taken in order to settle all questions about the amount of liability, etc., and to put them in such shape that they will speak for themselves in case of the death of debtor or creditor, and yet, if the burden is put upon the payee to sustain the consideration, simply because the maker denies it, they are in fact of little more use between the parties than an open account would be. The creditor may destroy his checks or other evidence, if he has any, tending to prove consideration for a note which has been in existence for some time, or has been renewed from time to time, and if he has done so, then the fact that a negotiable promissory note imports consideration and the *prima facie* presumption that there was value are of little benefit, if the debtor can, by offering some evidence that there was no consideration, cast the burden on the plaintiff. It is of course wise not to make a note or a bill of exchange conclusive of a valid consideration, but the burden should at least be on the one setting up a want of consideration, and that burden should not be shifted, but should rest on him to the end of the case.

We do not understand the appellant to press his exception to the modification of the fourth prayer. That ruling was too clearly right to require a discussion of it. Finding no reversible error in the rulings of the Court, we must affirm the judgment.

*Judgment affirmed, the appellant to pay the costs.*