# DANIEL A. LEONARD

### vs.

# UNION TRUST COMPANY.

*Indorsement on Note—Parol Agreement—Failure of Consideration—Delay in Presenting for Payment—Notice of Dishonor—Indorsers Severally Liable.*

In an action against an indorser of a note, defendant can show that his indorsement was secured by a contemporaneous parol agreement on the part of plaintiff corporation, which controlled the maker of the note, also a corporation, that payments made to the latter under a certain contract would be applied on the note, and that they were not so applied, this involving to that extent a failure of consideration.

pp. 198-200

Where the delay in presenting a note for payment, and in making protest and sending notice of dishonor to the indorser, was due to efforts to reorganize the company which signed the note, and of which the indorser was president, with the view of paying all its indebtedness, including the note in question, *held* that the note was presented, and notice of dishonor given, within a reasonable time, and that the evidence would have justified a finding that any delay in this regard was waived.

p. 201

Code, art. 13, sec. 87, providing that "joint payees or joint indorsees who indorse are deemed to indorse jointly and severally," has no application to distinct accommodation indorsers, who are, in the absence of evidence to the contrary, to be regarded as having agreed to be liable severally. 

p. 201

*Decided January 13th, 1922.*

Appeal from the Baltimore City Court (SOPER, C. J.).

Action by the Union Trust Company of Maryland against Daniel A. Leonard. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued, together with that next following, before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Francis R. Cross* and *W. Irvine Cross,* for the appellants.

The agreement that the payments under the contract should be applied on the note should have been admitted. *Code,* art. 13, secs. 47, 77; *Ingersoll* v. *Martin,* 58 Md. 67; *Herrman* v. *Combs,* 119 Md. 41; *Shaffer* v. *Bond,* 129 Md. 648; *Spies* v. *Rosenstock,* 87 Md. 14; *Harper* v. *Davis,* 115 Md. 349; *Dever* v. *Silver,* 135 Md. 355.

*Walter H. Buck* and *James Morfit Mullen,* for the appellee.

Evidence as to the agreement in regard to the application of payments on the note was properly excluded. *Bailey* v. *Rockwall Co. Nat. Bank* (Tex.), 61 S. W. 530; *Shaffer* v. *Bond,* 129 Md. 648; *Jenkins* v. *Nat. Bank of Baltimore,* 134 Md. 85; *Daniel, Neg. Inst.,* sec. 80; *Central Bank* v. *O'Connor,* 132 Md. 578; *Lewis* v. *Wilson,* 108 S. C. 47; *Moore* v. *Prussing,* 165 Ill. 319; *Burns & Smith Co.* v. *Doyle,* 71 Conn. 742; *Lunsford* v. *Maulsby,* 101 Ga. 39; *McSherry* v. *Brooks,* 46 Md. 103; *Black* v. *Bank of Westminster,* 96 Md. 399; *Herman* v. *Combes,* 119 Md. 41; *Homewood Bank* v. *Heckert,* 207 Pa. St. 231.

Thomas, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the Union Trust Company of Maryland against the appellant for $4,583.76 as indorser of the following promissory note:

"$5,000.00.               Baltimore, Aug. 17, 1917.

"On demand after date we promise to pay to the order of ourselves five thousand 00/100 dollars at Union Trust Co. of Md.   Value received.

"Amiesite and Stone Co.,
        "Daniel A. Leonard, President.
        "Edward Pilert, Treasurer,
                15 E. Fayette St."

Endorsed.

"Amiesite and Stone Co.,
    "Daniel A. Leonard, President.
    "Edw. Pilert, Treasurer.
    "Daniel A. Leonard.
    "Edw. Pilert.
"Amiesite and Stone Co., .
    "Daniel A. Leonard, President.
    "Edw. Pilert, Treasurer."

To the declaration, containing the common counts in assumpsit and a special count on the note, the defendant filed five pleas, first, that "he never was indebted as alleged"; second, that he never promised as alleged; third, that the note was procured by fraud; fourth, that the note was executed and delivered by the defendant in consideration of certain promises by the plaintiff, which the plaintiff "wilfully and intentionally violated"; and fifth, that the note was dishonored by non-payment and no notice of dishonor was given to the "defendant as endorser thereof." The plaintiff joined issue on the first and second pleas and filed replications to the others, and the defendant joined issue on the replications. After the case was removed from the Superior Court of Baltimore City to the Baltimore City Court for trial, the defendant filed a sixth plea, alleging that the note was indorsed by the defendant "with one Edward Pilert"; that the said indorsement was a joint and several indorsement, and that the plaintiff, in a separate suit against Edward Pilert, had recovered a judgment against him in the Superior Court of Baltimore City on the 28th of February, 1921, for $4,-553.96, and that therefore the suit against the defendant could not be maintained. After the court below overruled a motion that the plea be not received, and a demurrer to the plea, the plaintiff filed a replication denying that the indorsement was a joint and several indorsement, and the defendant joined issue on the replication.

During the trial the defendant reserved an exception to the refusal of the court to admit certain evidence offered by him, and a further exception to the action of the court on the prayers.

The plaintiff offered in evidence the note, and proved that it was presented for payment on the 6th of February, 1920, and was protested for non-payment, and notices sent to the Amiesite and Stone Co., Edward Pilert, and the defendant. on the same day.   The plaintiff also offered in evidence a petition filed by it in the District Court of the United States against the Amiesite Company, alleging that said company was indebted to the trust company and others to the amount of about $80,000, and was unable to pay workmen and material men or to proceed with its business, and praying for the appointment of receivers, the answer of the Amiesite Company, by Daniel A. Leonard, its president, admitting the allegations of the petition, the order of court appointing receivers, and an agreement of counsel that, on the 15th of December, 1917, the property and assets of the company were placed in the hands of receivers, that said company was insolvent, that the trust company filed its claim for the amount due on the note in this case "among others," that on or about July 31st, 1919, the trust company received a dividend thereon of $691.65, and that on January 14th, 1918, W. Graham Boyce and Clarence K. Bowie were appointed permanent receivers.   The plaintiff further proved that the loan to the Amiesite and Stone Company, represented by said note, was applied for by the defendant, who was the president of said company, owned two-thirds of its capital stock and "was the active man in its affairs," and that the trust company agreed to make the loan provided the note was indorsed by the defendant and Edward Pilert; that the defendant brought the note to the trust company's office on the 17th of August, 1917, indorsed by the Amiesite and Stone Company and by the defendant, and told Mr. Grape, the vice-president of the trust company, that Mr. Pilert would

come in later in the day and indorse it; that Mr. Pilert did come in later and indorsed the note, and that the $5,000, for which the note was given, was then paid to the Amiesite and Stone Company; that the Amiesite Company also had a banking account with the trust company, and that when it went into the hands of receivers on the 15th of December, 1917, there was a balance of $28.29 in its account, and that said balance was credited on the note, and that said sum of $28.29 and the dividend of $691.65, which the trust company received from the receivers, were the only payments made on the note. It also appears that there were a number of other obligations of the Amiesite Company due the trust company; that Mr. Boyce, one of the vice-presidents of the trust company, was one of the receivers, and that, after the receivers were appointed, the defendant went to see Mr. Boyce twice a day for weeks with the view of getting the company "refinanced" and getting "it going again"; that they were not successful because the contracts of the Amiesite Company for construction work had been made before the war, and labor had gone up "almost double and it was impossible to pull them out"; that they worked with the defendant and did everything they could to get the company going again, but that it was impossible, and that the bonding companies finished up the contracts "and had large losses." In reply to the question: "In the reorganization which Mr. Leonard (the defendant) was hoping to effect at that time, was this five thousand dollar note to the Union Trust Company to be taken care of?" Mr. Boyce replied: "The idea was, if we could get the thing going again, to take up all this indebtedness in the new company, we took it up with a great many people, people in Philadelphia, they owned these lots, and about running the quarry, did a great deal of work. If we had got it going again we could have cleaned up this indebtedness, but it could not have been done under the circumstances, because prices had changed so. Contracts had been made on a low basis and after the war everything was

on a different basis, it was impossible to get things going." Mr. Boyce further testified as follows: "Q. Is there any likelihood that the trust company will get anything more out of the receivership? A. Does not look very likely, it is pretty dead. Q. You have testified that you are one of the officers of the Union Trust Company. One of the pleas filed in this case is that the defendant complains that you did not give notice and sue soon enough in the matter. What was it that influenced the trust company's officers to hold off any proceedings against Mr. Leonard? A. Well, he always had hopes of reorganizing the thing, and for some time we had hopes of reorganizing the thing, and he was in our office every week or two discussing the thing, even in the last ninety days he had parties looking at the property trying to do something with it. There was no question of notice involved. He was trying to do what he could and we were trying to help him to get this thing going. He knew that. Q. In other words, you did not desire to press the man unduly? A. No, we gave him every consideration we could."

When the defendant was called as a witness, in answer to the question of his counsel, "Did you have any understanding or agreement with Mr. Grape as to the indorsement of the particular obligation sued on?" he said, "I did," and upon objection to the question, his counsel made the following offer of proof:

"We offer to prove that when the contracts (contracts for road construction, etc.,) were made with the Amiesite Company, with the State, that it was agreed by the Union Trust Company at its own instance and desire that the Amiesite Company should take these contracts, and that the Union Trust Company would finance them to the extent of ninety per cent. on the estimates alone. That is the first thing.

"Second, that the Union Trust Company did not keep that agreement, and that when these contracts got more onerous, because of the increase in price that my brother spoke of this morning, the Union

Trust Company distinctly and openly went back upon that agreement, and instead of financing the contracts on the estimates of the State, required the furnishing of notes indorsed by the two officers of that company, and the advancing of other property as collateral.

"Third, that when this note had been made, drawn, and it was proposed that the two gentlemen on it should endorse it, they demurred, and the Union Trust Company then, through one of its highest officers, agreed, as a consideration of their endorsing the note personally, that the payments from a specified contract should be applied to the payment of the note.

"Fourth, that those payments were not so applied, and although the Union Trust Company had full power to control the actions of the Amiesite Company, that they were not so applied, and that the Union Trust Company put this company in the hands of receivers rather than continue its advances."

The court refused to admit the evidence, and the defendant reserved his first exception. Counsel agreed that two suits were brought on the note sued on in this case on the 24th of February, 1920, in the Superior Court of Baltimore City, one against Edward Pilert and the other against the defendant, and that judgment was recovered in that court on February 21st, 1921, against Edward Pilert.

While the evidence proposed is not very clear and definite, we think the offer should be treated as one to prove that the defendant and Edward Pilert indorsed the note sued on in consideration of a contemporaneous parol agreement of the trust company that the payments under a certain contract of the Amiesite Company, which were subject to its disposition and control, would be applied to the payment of the note, and that such payments were not so applied. Counsel for the appellee insist that such an agreement is not admissible, under the familiar general rule that parol agreements are not admissible to vary the terms of a written contract. Section 48 of article 13 of the Code expressly provides that "absence

or failure of consideration is a matter of defense against any person not a holder in due course," and that "a partial failure of consideration is a defense *pro tanto*, whether the failure is an ascertained and liquidated amount or otherwise," and the right to show failure of consideration for the contract of a party to a note, where the holder has knowledge of the infirmity, is fully recognized in this State. *Ingersoll* v. *Martin*, 58 Md. 67; *Herrman* v. *Combs*, 119 Md. 41; *Shaffer* v. *Bond*, 129 Md. 648; *Harper* v. *Davis*, 115 Md. 349; *Dever* v. *Silver*, 135 Md. 355. In *Jenkins* v. *First National Bank of Baltimore*, 134 Md. 85, this Court held that it was competent for the defendant to show by parol that the note was delivered to be held upon a condition to be performed before the holder's rights could attach, and in 3 *R. C. L.*, p. 943, it is said: "But the rule, that parol evidence is not admissible to contradict or vary an absolute engagement to pay money on the fact (face) of the bill or note, does not exclude evidence as between the original parties showing a total or partial failure of consideration. Where the action is between the original parties to a promissory note or others having notice, the maker may show a contemporaneous parol agreement between the payee and himself which induced him to sign it and which agreement has been violated by the payee." See also 8 *C. J.*, p. 737, sec. 1015, which states the general rule recognizing the admissibility of collateral agreements, and then cites an early case from Indiana and one from Missouri in support of the exception excluding parol agreements. In the case of *Faux* v. *Fitler*, 223 Pa. St. 568, the Supreme Court of Pennsylvania said: "This controversy being between the original parties to the notes, the defendant could defeat a recovery by showing a contemporaneous parol agreement between the maker and payee which induced the former to execute and deliver the notes, and which agreement had been violated by the payee. This doctrine is well settled by many decisions in this State." The court then quoted from the case of *Clinch Valley Coal & Iron Co.* v. *Willing*,

180 Pa. 165, where it was said: "The existence of a contem-
poraneous parol agreement betwen the parties under the
influence of which a note or contract has been signed, which
is violated as soon as it has accomplished its purpose in secur-
ing the execution of the paper, may always be shown when
the enforcement of the paper is attempted. It is a plain
fraud to secure the execution of an instrument by representa-
tions as to the manner in which payment shall be made, dif-
fering in important particulars from those contained in the
paper, and, after the paper has been signed, attempt to com-
pel literal compliance with its terms, regardless of the con-
temporaneous agreement without which it never would have
been signed at all." See also cases cited in notes to section 139
of 3 R. C. L. 943. Under the circumstances of this case, we
think the evidence proposed was admissible for the purpose
of showing a failure of the consideration for which the de-
fendant became an indorser of the note, and that there was
error in the refusal of the court to admit it.

At the conclusion of the evidence the court below granted
the plaintiff's third, fourth and fifth prayers, instructing the
jury that there was no evidence to show that the note was pro-
cured by fraud, or a failure of consideration, or that the in-
dorsements of the defendant and Edward Pilert were joint
and several, and rejected the defendant's prayers asserting
that there was no evidence to show that there was a demand
upon the maker for the payment of the note, and no evidence
to prove that the note was presented for payment and notice
of dishonor sent to the defendant within a reasonable time.

There is no objection urged against the plaintiff's first
and second prayers other than the objection covered by the
defendant's objection to plaintiff's fifth prayer and the rejec-
tion of his own prayers. While the evidence shows that the
note was not presented for payment, protested and notice sent
to the defendant, until February 6th, 1920, it also shows that,
after the receivers took charge of the property of the Amic-
site Company, the defendant and the officers of the trust

company were engaged, until a short time before the note was protested, in efforts to reorganize or refinance the company with the view of paying all the indebtedness of the company, including the note in suit, and that the delay in having the note protested, &c., was due to the desire of the trust company not to press the defendant and to do all it could to get the Amiesite Company "going" again. Under these circumstances we think the note was presented, and notice of dishonor given to the defendant, within a reasonable time (*Anderson* v. *Gill,* 79 Md., p. 319), and that there was evidence from which the jury could have found that the defendant acquiesced in, and waived any right he would otherwise have had by reason of, such delay (8 *C. P.,* pp. 696-701 ; 3 *R. C. L.* 1187, sec. 409; *Long* v. *Crawford,* 18 Md. 220; *Linthicum* v. *Bagby,* 131 Md. 644), and that the defendant's prayers were therefore properly rejected.

There was no evidence tending to show that the note was procured by fraud, or to show a failure of consideration for the note, and the plaintiff's third and fourth prayers were properly granted. In support of his objection to plaintiff's fifth prayer the defendant relies upon section 87 of article 13 of the Code, which provides: "Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally." But the defendant and Edward Pilert were not "joint payees or joint indorsees," and there was no evidence in the case to show that they indorsed jointly and severally. It is said in 3 *R. C. L.,* p. 1133, sec. 348: " In the absence of evidence of a special agreement, the law implies that indorsers have agreed to be liable severally, in the order in which their names appear upon the paper. * * * It is a general rule followed by overwhelming weight of authority that the relationship between accommodation parties to a note is the same as that existing between the parties to ordinary business paper. Their liability, *inter se,* in the absence of an express agreement to the contrary, is that expressed by the paper itself, and their liability is successive, and not joint."

See also other provisions of section 87 of article 13 of the Code, and the case of *Bradley* v. *Louisville Food & Products Company,* 139 Md. 385.

In addition to the prayers offered by the defendant the defendant filed a motion for a *non pros* under section 2 of article 50 of the Code, but that is disposed of by what we have said in regard to his objection to the plaintiff's fifth prayer.

We find no error in the ruling of the court below on the prayers, but, because of the error in the first exception, the judgment must be reversed and case remanded for a new trial.

*Judgment reversed, with costs and new trial awarded.*