(No. 20072.—

THE AMERICAN NATIONAL BANK OF MT. CARMEL, Defendant in Error, *vs.* ROBERT WOOLARD *et al.* Plaintiffs in Error.

*Opinion filed December 18, 1930.*

CONGER & ELLIOTT, for plaintiffs in error.

P. J. KOLB, and M. J. WHITE, for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

The American National Bank of Mt. Carmel, defendant in error, obtained judgment by confession in the circuit court of Wabash county on a judgment note in the principal sum of $9000, executed by Robert and Mary Woolard, husband and wife, plaintiffs in error, in favor of the First State Bank of Mt. Carmel as payee and indorsed by it to defendant in error. On motion of plaintiffs in error the judgment was vacated and leave given to plead to the declaration. Trial was had before a jury under a stipulation that plaintiffs in error should have the right to interpose any defenses to the note that they might have interposed had the suit been brought in the name of the First State Bank. The jury brought in a verdict finding the issues for defendant in error and fixing the damages at $4000. At the close of all the evidence defendant in error moved for a directed verdict in its favor for $10,172.50, the amount

of the original judgment as confessed, being the principal, interest and attorney's fees according to the tenor of the note. This motion was denied, a motion by defendant in error for a new trial was overruled and judgment was entered in favor of defendant in error for $4000. From this judgment defendant in error appealed to the Appellate Court for the Fourth District. That court reversed the judgment of the circuit court and remanded the cause, with directions to enter a judgment order confirming the original judgment by confession, making a finding of fact to the effect that plaintiffs in error had failed to prove any legal defense to the note counted on in the declaration. The case is here on *certiorari*.

The position taken by plaintiffs in error is that $5000 of the note sued on represented accommodation paper, given for the purpose of allowing the payee bank to discount the same at the Federal Reserve Bank, that they had received no consideration for this portion of the note, and that consequently they have a good defense to the extent of $5000 of the principal sum claimed by defendant in error.

Under the provisions of the Negotiable Instruments law every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration and every person whose signature appears thereon to have become a party thereto for value. (Cahill's Stat. 1929, chap. 98, par. 44.) It is further provided that absence or failure of consideration is a matter of defense as against any person not a holder in due course. (Cahill's Stat. 1929, chap. 98, par. 48.) The burden of proving this defense under the Negotiable Instruments law is upon the defendant who seeks to assert it. *Harponola Co.* v. *Wilson,* 96 Vt. 427, 120 Atl. 895; *Baggish* v. *Offengand,* 99 Conn. 683, 122 Atl. 790; *Shaffer* v. *Bond,* 129 Md. 648, 99 Atl. 973; *McCormack* v. *Williams,* 88 N. J. L. 170, 95 Atl. 978; *First Presbyterian Church* v. *Dennis,* 178 Iowa, 1352, 161 N. W. 183; *Carter* v. *Butler,* 264 Mo. 306, 174 S. W. 399; *Bernert* v. *Bernert,*

123 Okla. 78, 254 Pac. 724; *Home State Bank* v. *DeWitt,* 121 Kan. 29, 245 Pac. 1036; *Hickman-Lunbeck Grocery Co.* v. *Hager,* 75 Colo. 554, 227 Pac. 829; *First State Bank* v. *Radke,* 51 N. D. 246, 199 N. W. 930; *Piner* v. *Brittain,* 165 N. C. 401, 81 S. E. 462; *Gleason* v. *Brown,* 129 Wash. 196, 224 Pac. 930; *Kemppainen* v. *Suomi Temperance Society,* 275 Pac. (Ore.) 680; *Walker Bros. Bankers* v. *Janney,* 290 Pac. (Nev.) 413; *First Nat. Bank* v. *Doschades,* 279 Pac. (Ida.) 416; 2 Williston on Contracts, p. 2129, note; Brannan on Negotiable Inst. Law, (4th ed.) pp. 217-221. See, also, *McMicken* v. *Safford,* 197 Ill. 540, and *Boxberger* v. *Scott,* 88 id. 477.

The record discloses that Robert Woolard purchased thirty shares of stock in the First State Bank in 1919 and gave in payment a note in the principal sum of $3750. Subsequently he became a director of that bank. On December 14, 1921, he signed a note payable to the First State Bank for $8700. To renew this latter note, on March 13, 1922, Woolard and Mrs. Woolard signed another note in the sum of $8700. On July 13, 1922, there was a further renewal, Woolard and Mrs. Woolard drawing a check for $1500.04, representing the interest and $1000 on the principal, and signing a note for $7700. This note was renewed by another $7700 note executed January 13, 1923. On September 26, 1923, Woolard, as maker, signed a note for $9025 and Mrs. Woolard indorsed it. This note included the amount then due under the last $7700 note previously given and which was thereby canceled, and the amount due under certain other notes which were also canceled. In November of 1923 the First State Bank became involved in financial difficulties, and through the board of directors, including Woolard, entered into a contract with defendant in error whereby the latter assumed the liabilities of the First State Bank and provided for its liquidation. The $9025 note was at the time of making this contract a part of the assets of the First State Bank, which had been re-

discounted at the Federal Reserve Bank of St. Louis. Some time after the making of this contract the Federal Reserve Bank called upon defendant in error to take up the $9025 note, and the latter thereupon paid the Federal Reserve Bank the amount of the note, with interest. Thereafter, on January 20, 1924, plaintiffs in error renewed the $9025 note by executing, payable to the First State Bank, their note for $9000 and an additional note covering $25 of the principal and a sum claimed by defendant in error to be interest on the $9000 note. This $9000 note is the instrument declared upon in the present suit.

While it appears of record that during the year 1921, and subsequent thereto, there were many business transactions between plaintiffs in error and the First State Bank which involved the execution of negotiable instruments by plaintiffs in error in favor of the First State Bank other than the notes referred to in the preceding paragraph, the evidence relied upon by plaintiffs in error to establish their defense to the present suit may be set out in a very few sentences. Testifying as to the $8700 note of December 14, 1921, Woolard stated on direct examination that $3700 of it was for the bank stock and "$5000 of it was Federal Reserve to borrow money on for the First State Bank." Testifying as to the $7700 note of July 13, 1922, Woolard said that "it was for the bank stock and $5000 borrowed from Federal Reserve,"—a renewal of the $8700 note. Woolard further testified that when the $9000 note was executed he told J. M. Mitchell, president of the American National Bank, that plaintiffs in error did not owe him that amount; that they did not owe $5000 of it because the First State Bank had "borrowed some money" from witness and "this here was put in that." In answer to the question as to what the First State Bank was borrowing the money for, Woolard replied, "They wanted to borrow money so they could loan it out—so they said." Under objection made by counsel for defendant in error, Woolard stated

that the conversation to which he referred in stating "so they said," was with Howard P. French, president of the First State Bank, who had since died. The court thereupon granted counsel's motion to strike the "wanted-to-borrow-money-so-they-could-loan-it-out—so-they-said" answer of the witness. Counsel for Woolard, in further examining him, then stated that witness might tell the jury whether witness "owed any of that $9000 note, and if there was any portion you did not owe, state to the jury what portion it was." Woolard answered that "there was $5000 of it we didn't owe," and that this was the $5000 he spoke to Mitchell about. Woolard also testified that the $1000 which he paid July 13, 1922, and which resulted in the renewal note being $7700 instead of $8700, was for "the bank stock and interest," and that Dick Stansfield, assistant cashier of the First State Bank, told witness that $1000 of the $1500.04 check "was on the bank stock." On cross-examination Woolard was asked, "You said something here about your having given the bank your note to enable it to borrow $5000 from the Federal Reserve Bank; with whom was that arrangement made?" Witness replied that it was made with Howard P. French. Witness was then asked, "And what you have said as to that transaction was based on a conversation you had with Howard P. French?" The answer was, "Yes." Witness further testified that French handled the entire matter; that French told witness that was what the note was being taken for, and that the entire evidence of witness as to that transaction was based upon a conversation with French, "absolutely." Counsel conducting the cross-examination then referred back to the answer of Woolard on direct examination that "$5000 of it was Federal Reserve to borrow money on for the First State Bank," and asked, "That part of the answer was based upon information that you obtained in a conversation with Mr. French, was it not?" Woolard answered, "Yes." Upon motion the court then struck from

the record the portion of Woolard's testimony in which he stated that "$5000 of it was Federal Reserve to borrow money on for the First State Bank." On re-direct examination of Woolard the record shows the following questions and answers:

Q. "Did you ever get anything for the note sued on—originally given—except the stock which you subscribed for?

A. "I never even got no stock.

Q. "I know, but you became legally liable for it?  ·

A. "Yes.

Q. "Did you get $5000 from the bank at the time you gave that note?

A. "No, sir.

Q. "Did you get—or state to the jury what you did get for that $8700 note then?

A. "I got nothing.

Q. "What do you mean by didn't get nothing?

A. "I never got no money on it."

Mary Woolard testified on direct examination that her husband "didn't get" and "didn't borrow" the $5000. On cross-examination, however, it was brought out that she had no knowledge of her own in the matter and that her testimony was based on hearsay.

In every action, suit or proceeding a party to the same who has contracted with an agent of the adverse party, the agent having since died, shall not be a competent witness as to any admission or conversation between himself and such agent unless such admission or conversation with the deceased agent was had or made in the presence of a surviving agent or agents of such adverse party. (Cahill's Stat. 1929, chap. 51, par. 4.) In the light of this statutory provision the action of the trial court in striking from the record, as above indicated, certain answers of Woolard was proper. To support the defense there remains Woolard's statement that the $7700 note "was for the bank stock and

$5000 borrowed from the Federal Reserve;" his assertion regarding the $9000 note that "there was $5000 of it we didn't owe;" his further assertion that he told Mitchell plaintiffs in error did not owe $5000 of the $9000 note because the First State Bank had "borrowed some money" from him and "this here was put in that;" his statement that the $1000 paid on principal of the $8700 note was for "the bank stock and interest" and that Dick Stansfield told him $1000 of the $1500.04 check "was on the bank stock," and the statement of Mrs. Woolard that her husband "didn't get" and "didn't borrow" the $5000.

In the absence of evidence on which a jury could in the eye of the law reasonably find in favor of the party holding the affirmative of an issue, a motion to direct a verdict against the party so holding the affirmative should be allowed. Evidence sufficient to defeat such a motion must be evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the party so having the affirmative. (*Offutt* v. *Columbian Exposition,* 175 Ill. 472.) The issue presented by the present case is therefore whether, upon the evidence relied upon by plaintiffs in error, a jury could, without acting unreasonably in the eye of the law, decide in their favor.

In dealing with this issue it is essential to keep in mind that "value," as employed in the section of the Negotiable Instruments law, which prescribes that every person whose signature appears upon a negotiable instrument is deemed *prima facie* to have become a party thereto for value, is any consideration sufficient to support a simple contract, and that even an antecedent or pre-existing claim, whether for money or not, constitutes value where an instrument is taken either in satisfaction therefor or as security therefor, and is deemed such whether the instrument is payable on demand or at a future time. (Cahill's Stat. 1929, chap. 98, par. 45.) Considering Woolard's statement that the $7700 note "was for the bank stock and $5000 borrowed

from the Federal Reserve," it is obvious upon analysis of the language that only by straining its significance beyond what it will properly bear can it be held to call for the conclusion that plaintiffs in error did not receive ample consideration for the note. Neither is the receipt of ample consideration fairly negatived by Woolard's self-serving conclusion expressed to Mitchell that plaintiffs in error did not owe $5000 of the note because the First State Bank "had borrowed some money" from Woolard and "this here was put in that." The same must be said as to the statement that the $1000 paid on principal was for "bank stock and interest" and that Stansfield told Woolard $1000 of the check "was on the bank stock." The conclusion of Mrs. Woolard appears affirmatively to have been expressed without knowledge of her own as to the facts, and, moreover, does not negative the presence of lawful consideration. So far as Woolard's statement that "there was $5000 of it we didn't owe" is concerned, his further testimony shows conclusively that this was based altogether upon the fact that he "never got no money" on the note. It must furthermore be said that the conclusion which fairly and necessarily follows from taking into consideration all of the evidence on the point of lack of consideration is, that this defense has for its only factual foundation the non-receipt of money by plaintiffs in error on the note.

In *Drake* v. *Seck,* 116 Kan. 717, 229 Pac. 67, where in a proceeding to recover on certain promissory notes a directed verdict for plaintiff was upheld, the court aptly said: "The statement that the administratrix was in a position to know, and knew, there was no consideration for the notes was mere opinion and conclusion of the witness. It arbitrarily leaped over facts warranting the conclusion and dictated to the jury what it should find. * * * The presumption of consideration is not a presumption of law—it is a presumption of fact. It extends to any fact which under the situation and circumstances of the parties might

reasonably supply a consideration, and it cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind. Consideration may arise in various ways, and proof of absence of one kind does not necessarily disprove presence of another kind." This language is fairly applicable to the present record. Granting that plaintiffs in error made a sufficient showing that they received no money, no facts are disclosed warranting the inference of no consideration of other kinds equally lawful and equally adequate. To find that plaintiffs in error by proving absence of one possible kind of consideration have thereby proved that there was no consideration would obviously be to act unreasonably in the eye of the law. The motion of defendant in error for a directed verdict should have been allowed, and the judgment of the Appellate Court was proper.

Plaintiffs in error contend that the Appellate Court erred in reversing the judgment of the circuit court and entering its own judgment with a finding of facts without remanding. In support of this contention it is argued that plaintiffs in error have thereby been deprived of their constitutional right to trial by jury. The contention is not well taken. Inasmuch as the circuit court should have allowed the motion of defendant in error for a directed verdict the judgment entered by the Appellate Court was authorized. *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343.

The judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*