## GENERAL COURT, MAY TERM, 1802.

### CLARKE *vs.* RAY.

*The general court decided, that if a debtor, within the purview of the act of congress, is imprisoned for debt, &c. for the space of 3 months, in such case the act of bankruptcy being committed at the end of 2 month's imprisonment, the creditor has only one month allowed him to prefer his petition to the judge; and if he omits to prefer one within that time, the act of bankruptcy ceases to operate from the expiration of the 3 months, and the debtor may avail himself of the acts of insolvency of the state. But it was held by the circuit court of the U. S. that a person who falls within the purview of the bankrupt law of the U. S. after commitment of 3 months, cannot avail himself of the benefit of a state insolvent law, if the creditors sue out a commission against him within 6 months next succeeding the act of bankruptcy occasioned by his commitment.*

ISSUES from the court of chancery, to try whether *James Ray* was a trader, &c. within the meaning of the act of congress.

1. These issues arose upon an application of *Ray* to the chancellor, for the benefit of an act of insolvency passed in his favour at *November* session 1801; which was opposed by *Clarke*, alleging that *Ray* was a trader, and consequently could not be relieved by an act of insolvency of the state.

*Mason* and *Shaaff*, for plaintiff.

*Martin*, (Attorney General,) and *Buchanan*, for defendant.

CHASE, Ch. J. *(a.)* The chancellor, by the act of assembly (1801, *ch.* 18,) co-operating with the law of the United States, has a power to direct issues in a summary way to inquire whether a debtor, who applies to him for relief under the insolvent law, is liable to be made a bankrupt under the law of the United States. The chancellor, pursuant to such power, has directed certain issues to be tried in this court, and has requested the opinion of this court on the questions (which have been discussed,) on the supposition.

Where an agreement has been admitted in evidence without objection, a subsequent agreement to the same effect, endorsed on the said agreement, permitted to be read also.

The delivery of every deed must be proved, as well as the execution of it, being an essential requisite to the validity of it; but the possession of a bond being with the obligee is sufficient evidence of a delivery.

*Quere.* If a bill of exceptions can be taken to the opinion of the court given on the trial of issues from the court of chancery?

*(a)* *Duvall* J. concurred. *Done*, J. absent.

tion that such questions would arise out of the present case, and this court, to expedite business, as the inquiry before the jury could not proceed, owing to the indisposition of one of them, did request the counsel to argue the said questions.

The following is the question submitted by the chancellor: "Whether or not a man, having been ar-"rested for debt after the 1st day of June 1800, "(when the said bankrupt law commenced its opera-"tion,) and having remained, in consequence of that "arrest, three months in prison before a commission "issued against him under that bankrupt law, can be "deprived of the benefit of an insolvent law of this "state, passed in his favour, on account of his being "arrested or charged in execution for another debt, "and his not having remained three months after "such arrest or charging in execution before a com-"mission issued against him under the said law?"

By the constitution of the United States, *1st article, 8th section,* Congress have power to establish uniform laws on the subject of bankruptcies throughout the United States.

Congress have exercised the power granted under the constitution, and passed a law declaring what persons may become bankrupts; what shall be deemed acts of bankruptcy; and prescribed the mode of proceeding against bankrupts by the act to establish an uniform system of bankruptcy throughout the United States, passed on the 4th of April 1800. The *first* section of this act describes the persons who may become bankrupts, and specifies the several acts which shall be deemed acts of bankruptcy.

The being *arrested for debt,* and remaining in prison two months or more, is one of the acts of bankruptcy mentioned—many other acts are enumerated, each of which constitutes an act of bankruptcy.

No person is liable to a commission of bankruptcy, unless the petition is preferred in the manner directed by the said law, and within *six* months after the act of bankruptcy committed.

This, in general, is the time limited within which the creditor must prefer his petition in order to have his debtor declared a bankrupt. By the *sixty first* section—This act is not to repeal or annul the laws of any state, enacted or to be enacted for relief of *insolvent debtors,* except *they are* within the *purview* of the act, and *whose debts* amount in the *cases specified* in the *second* section, to the sums mentioned therein.

If any person within the purview of the act shall be imprisoned for three months for any debt, or upon contract, unless the creditors shall proceed to prosecute a commission of bankruptcy against him or her, agreeably to the provisions of the act, such debtor may and shall be entitled to relief under the state laws for relief of insolvent debtors.

It must be supposed that Congress, in this law, have extended the provisions relative to bankruptcies as far as good policy and general utility required.

The act in its operation is confined to a certain description of persons, and certain specified cases of such persons.

The legislatures of the several states have competent authority to pass laws for the relief of all persons who are not comprehended within the act of Congress.

That part of the constitution of the United States relating to bankrupts, is carried into operation by the law of Congress, as far as that body thought it was politic and expedient; and the law of Congress constitutes the only restriction which is imposed on the state legislatures in the case of insolvent debtors.

The law allows the creditor six months to prefer his petition after an act of bankruptcy committed, in order to render the debtor liable to a commission of bankruptcy. But this right is abridged in one case by the law; where a debtor, within the purview of the act, is *imprisoned* for debt or upon contract, for the space of *three months,* in that case the creditor has only one month allowed him after the act of bankruptcy committed. And if the creditors omit to prefer a petition within that time, the act of bankruptcy

ceases to operate on his case from the expiration of the three months, and the debtor may avail himself of the acts of insolvency of the state.

MAY 1802.

Clarke
vs.
Ray.

Unless this exposition is given to the act, a debtor imprisoned, who comes within the description of the bankrupt law, and whose case is one of the specified cases, would be subject to imprisonment for eight months at least.

The *second* section describes the proceedings which are to be had to obtain a commission of bankruptcy.

1st. The creditor is to exhibit his petition in writing before the judge of the district.

2d. Before the commission shall issue, the creditor shall make affidavit, or solemn affirmation, before the judge, of the truth of his or her debt.

3d. The creditor is to give bond, to be taken by the judge in the name and for the benefit of the party charged as a bankrupt, in the penalty and with such surety as the judge shall require, to be conditioned for the proving of his debt, proving the party a bankrupt, and to proceed on such commission.

The words of the *sixty-first* section *"unless the cre-* *"ditors shall proceed to prosecute a commission of bank-* *"ruptcy against him, agreeable to the provisions of this* *"act,"* refer to the proceedings in the second section for the purpose of obtaining a commission, and not to the *time* within which the proceeding is to be had. The time within which the commission is to be prosecuted is no part of the proceeding.

Unless the creditor shall *proceed to prosecute,* means unless the creditor shall exhibit his petition. The preferring a petition in writing before the judge, is the commencement of the proceeding to obtain a commission; and unless the creditor prefers his petition before the three months expire, the debtor cannot be proceeded against under the bankrupt law.

Any person, within the purview of the act, imprisoned for the space of three months for any debt, &c. *shall be entitled to relief* under any insolvent act of the state, enacted or to be enacted. His title to relief under the insolvent laws, attached as soon as the three

MAY 1802

Clarke
vs.
Ray

months imprisonment expired, unless the creditors proceed to prosecute a commission, *i. e.* prefer a petition before that time expires.

The right to relief having attached according to the law of Congress, no subsequent act of the creditors can defeat or divest such right.

It is said, and admitted, that the debtor cannot make himself a bankrupt; and if he does not apply for relief under the insolvent laws, he will lie in gaol.

Such conduct would not benefit the debtor—it would not exempt his property from execution—and he would be suffering under the imprisonment, and therefore cannot be presumed.

Where two courts have concurrent jurisdiction over the same subjects in contest, it may well be presumed that they will expound the law in the same way, and that the exposition given is the right one. But should they differ, there is no way of redressing the mischief resulting from such collision of opinion, but by resorting to a superior judicature who can control their judgments, and in that way redress the evil, and effect an uniformity of decision in future cases.

The judge of the court of the United States has not decided this case, and should this court determine the one way or the other, it may possibly be contrary to his judgment, and therefore the reasoning, if applicable, would go to the precluding this court from taking cognizance of the case.

The *fifty sixth* section provides, that the commission, and the assignment of the commissions of the bankrupt's estate, shall be conclusive evidence that the debtor is a bankrupt.

*Where an agreement has been admitted in evidence without objection, a subsequent agreement to the same effect, endorsed on the said agreement, permitted to be read also.*

2. In the trial of the issues, the plaintiff's counsel offered an agreement between a certain *James Piercy,* who was a sugar refiner in the City of Washington, and one *Walter Hellen,* by which the said *Piercy* agreed to give a certain per centage to *Hellen* for disposing of his refined sugars in Baltimore. This was countersigned by *Ray,* who had, as trustee for his wife, executed an agreement between himself and *Piercy,* by which he vested a large sum of money in

the hands of *Piercy*, at a very high premium, which sum of money, belonging to *Ray's* wife, *Ray* had agreed that *Hellen* should receive the per cent. fixed on by *Piercy*. and endorsed his agreement on the writing between *Hellen* and *Piercy*. This was not objected to, but was read to the jury. On the same paper was written a subsequent agreement between *Hellen* and *Piercy*, but not countersigned by *Ray* in the above manner. This was offered in evidence by the defendant's counsel, but objected to by the plaintiff's counsel.

MAY 1802.

Clarke
vs
Ray.

THE COURT however admitted the evidence.

3. The plaintiff, by his counsel, having given evidence of the contract between *Ray*, as trustee for his wife, and *Piercy*, by which they meant to contend from the largeness of the interest, that *Ray* was a trader, and the agreement fraudulent, and intended to prevent the partnership being known. The defendant's counsel then offered another deed, between *Ray* and *Piercy*, in which it was recited that *Ray's* wife had a large sum of money under the former deed in *Piercy's* hand. This was intended to counteract the idea of the former deed being fraudulent, and to shew that *Ray* was really a trustee, and not a partner. The witnesses to this deed were proved to be dead, and their hand-writing established. It was then objected to on the ground of the delivery not being proved, and also that it was giving *Ray's* own acts in evidence for himself, and that *Piercy*. the other party to the deed, was no party to these issues.

*The delivery of every deed must be proved, as well as the execution of it, being an essential requisite to the validity of it; but the possession of a bond being with the obligee is sufficient evidence of a delivery.*

DUVALL, J. *(a)*. The delivery of every deed must be proved, as well as the execution of it—It is an essential requisite to the validity of every deed. As to the case of a bond the possession being with the obligee, it is sufficient evidence of a delivery. There is no evidence of the delivery in this case—and if there were, it would not be admitted, as it would be suffering the party to be benefitted by giving his own acts in evidence in his own favour.

*(a) Chase*, Ch. J. absent.

*Martin,* (Attorney General,) for the defendant, wished to take a *bill of exceptions* to the opinion of the court.

*Quere.* If a bill of exceptions can be taken to the opinion of the court given on the trial of issues from the courts of chancery?

DUVALL J. A *bill of exceptions* cannot be signed in this case, being on the trial of issues from chancery.

*Vide,* contra—*Brown et al. vs. Pye,* in this court at May 1789, where, on a trial of issues from chancery, evidence was offered by the plaintiffs, which being admitted by the court, the defendant excepted, and a bill of exceptions was signed by *Hanson* and *Goldsborough,* J.

Issues from chancery tried at law, and found that a person petitioning for the benefit of the state insolvent laws was a trader within the meaning of the bankrupt law of the U. S.

4. The jury empannelled and sworn to try the several issues sent from the court of chancery in this case, found as follow, to wit:

*First Issue.* We find that *James Ray* was on the 3d day of January 1801, residing within the United States, to wit, in Prince George's county, in the state of Maryland, using the trade of merchandise, by buying and selling in gross and by retail.

*Second Issue.* We find that the said *James Ray* was arrested under a *capias ad satisfaciendum* issued against him out of the general court for the western shore by *James Barry,* on the 8th day of January 1801, and not before, he then using the trade of merchandise, by buying and selling in gross and by retail.

*Third Issue.* We find that *James Ray,* so using the trade of merchandise, on the 31st day of July 1801, was in the custody of the sheriff of Anne-Arundel county in prison, under an execution of *James Barry;* and so being in custody, a writ of *capias ad satisfaciendum* was issued against the said *James Ray,* by *Daniel Carroll of Duddington,* on the said 31st of July, which on the same day was delivered unto the said sheriff, who on that day served the said *capias* on the said *James Ray;* that the said *Ray* was committed on the said execution to the said sheriff, by the general court at October term following, to wit, on the 20th day of the said month of October.

*Fourth Issue.* We find that the said *James Ray,* being committed to the sheriff of Anne-Arundel county under an execution at the suit of *Daniel Carroll of*

*Duddington,* at October term 1801, remained in the custody of the said sheriff, in prison, until the present time, and so continues: That the aforesaid execution was delivered to the sheriff on the 31st day of July 1801, the said *Ray* then being in the custody of the sheriff aforesaid, under an execution of *James Barry.*

*Fifth Issue.* We find that the said *James Ray* was not arrested for debt at the suit of the *United States* at any time before the 1st day of January 1802.

*Sixth Issue.* ·We find that the said *James Ray* did use the trade of merchandise, by buying and selling in gross and retail, between the commencement of the bankrupt law, and the arrest by *James Barry;* but we find there was no dealing in exchange at any time between the periods aforesaid.

*Seventh Issue.* We find that a commission of bankruptcy issued on the 5th of November 1801, under the bankrupt law of the United States, against the said *James Ray.*

*Eighth Issue.* We find that the commission of bankruptcy which issued against *James Ray* on the 5th day of November 1801, was superseded by *Philip Barton Key,* Esquire, chief justice of the fourth circuit of the United States, on the 22d day of February 1802.

*Ninth Issue.* We find that *James Ray,* on the 8th day of January 1801, was arrested under an execution of *James Barry* against the said *James Ray,* and was on the same day committed to prison by the said sheriff of Prince-George's county, where he remained, until on the said execution he was committed to the sheriff of Anne-Arundel county at May term 1801; that the said *James Ray,* so being committed and in prison, a *capias ad satisfaciendum* issued against him by *Daniel Carroll of Duddington,* and was delivered unto the said sheriff of Anne-Arundel county on the 31st day of July, in the year aforesaid; on which said *capias* the said sheriff, on the day last aforesaid, arrested the said *James Ray;* and the said *Ray* was, at October term in the year last aforesaid, to wit, on the 20th day of October 1801, committed to the said sheriff, and has remained in custody of the said sheriff

May 1802

Clarke
vs
Ray

until this time: that a commission of bankruptcy issued against the said *James Ray* on the 5th day of November 1801, which was superseded on the 22d day of February in the year following; and that a new commission issued against the said *James Ray* on the 10th day of March last, which is still depending.

RICH'D. T. LOWNDES, Foreman.

*The general court decided, that if a debtor, within the purview of the act of congress, is imprisoned for debt, &c for the space of 3 months, in such case the act of bankruptcy being committed at the end of two months imprisonment, the creditor has only one month allowed him to prefer his petition to the judge; and if he omits to prefer one within that time, the act of bankruptcy ceases to operate from the expiration of the 3 months, and the debtor may avail himself of the acts of insolvency of the state*

THE COURT certified to the chancellor as follows, viz.

The General Court, upon the above finding by the jury, are of opinion, that if a debtor, who comes within the purview of the act of the United States, "to establish an uniform system of bankruptcy throughout the United States," is imprisoned for debt, or upon contract, for the space of three months, that in such case the act of bankruptcy being committed at the end of two months imprisonment, the creditors have only one month allowed them to prefer a petition after such act of bankruptcy committed, and if they omit to prefer one within that time, the said act of the United States ceases to operate on the case of the debtor from the expiration of the three months, and he may avail himself of the acts of insolvency of the state.

The general court are also of opinion, that the debtor's right to relief under the insolvent acts of the state, having attached, according to the law of the United States, no subsequent act of the creditors can defeat or divest such right.

JEREMIAH TOWNLEY CHASE.
G. DUVALL.

*But it was held by the circuit court of the U. S. that a person who falls within the purview of the bankrupt law of the U. S after commitment of three months, cannot avail himself of the benefit of a state insolvent law, if the creditors sue out a commission against him within 6 months next succeeding the act of bankruptcy occasioned by his commitment*

5. By the *first* section of the act of congress of the 4th of April 1800, entitled, "*An act to establish an uniform System of Bankruptcy throughout the United States*," it is enacted, "that from and after the first day of June next, if any merchant, or other person residing within the United States, actually using the trade of merchandise, by buying and selling in gross or by retail, or dealing in exchange, or as a banker, broker, factor, underwriter, or marine insurer, shall, with intent unlawfully to delay or defraud his or her

creditors, depart from the state in which such person usually resides, or remain absent therefrom, or conceal him or herself therein, or keep his or her house, so that he or she cannot be served with process, or willingly or fraudulently procure him or herself to be arrested, or his or her lands, goods, money or chattels to be attached, sequestered, or taken in execution, or shall secretly convey his or her goods out of his or her house, or conceal them to prevent their being taken in execution, or make, or cause to be made any fraudulent conveyance of his or her lands or chattels, or make or admit any false or fraudulent security, or evidence of debt, *or being arrested for debt,* or having surrendered him or herself in discharge of bail, *shall remain in prison two months, or more,* or escape therefrom, or whose lands or effects being attached by process issuing out of, or returnable to any court of common law, shall not within two months after written notice thereof enter special bail and dissolve the same, or in districts in which attachments are not dissolved by the entry of special bail, being arrested for debt after his or her lands and effects, or any part thereof, have been attached for a debt or debts amounting to *1000 dollars or upwards, shall not, upon* notice of such attachment, give sufficient security for the payment of what may be recovered in the suit in which he or she shall be arrested, at or before the return day of the same, to be approved by the judge of the district, or some judge of the court out of which the process issued upon which he is arrested, or to which the same shall be returnable, every such person shall be deemed and adjudged a bankrupt; *Provided,* that no person shall be liable to a commission of bankruptcy, if the petition be not preferred, in manner hereinafter directed, *within six months after* the act of bankruptcy committed."

By the *sixty-first* section of the said act, it is enacted, "that this act shall not repeal or annul, or be construed to repeal or annul the laws of any state now in force, or which may be hereafter enacted for the relief of insolvent debtors, except so far as the

MAY 1802

Clarke
vs
Ray

same may respect persons, who are, or may be clearly within the purview of this act, and whose debts shall amount in the cases specified in the second section thereof to the sums therein mentioned. And if any person within the purview of this act shall be imprisoned for the space of three months, for any debt, or upon any contract, unless the creditors of such prisoner shall proceed to prosecute a commission of bankruptcy against him or her, agreeably to the provisions of this act, such debtor may and shall be entitled to relief under any such laws for the relief of insolvent debtors, this act notwithstanding."

Under the *twelfth section* of the act of congress of the 13th of February 1801, entitled, "*An act to provide for the more convenient organization of the courts of the United States*," the validity of a commission of bankruptcy taken out against the within mentioned *James Ray*, came on to be tried before the circuit court of the United States, held for the fourth circuit, at the city of Annapolis, at the time when the issues herein before mentioned were before the general court; and after argument before the circuit court,

KEY, Ch. J. delivered the following opinion: After hearing and considering the arguments of counsel, I am of opinion, that a person who falls within the purview of the bankrupt law of the United States, after commitment of *three months*, cannot avail himself of the benefit of a state insolvent law, if the creditors of such person sue out a commission of bankruptcy against him within *six months* next succeeding the act of bankruptcy occasioned by his commitment.

The *first* section of the law of Congress gives to the creditors a period of *six months* to prosecute commissions of bankruptcy after the act of bankruptcy committed.

It is contended, that the *sixty-first* section must be taken into consideration with the *first* section, and that it operates as a restriction of the time in the special case of bankruptcy arising from imprisonment; and that but *three months* is allowed in this latter instance, it being *in favorem libertatis*.

In sound construction the two sections must be taken together; and in my judgment they are consistent with each other, and the *sixty-first* section is not repugnant to, nor does it restrict or abridge the operation of the *first*.

No part of a law ought to be considered as a repeal or restriction of a former express provision in the same law, unless such construction be inevitable.

The subject of bankrupt laws early engaged the attention of this country; and to produce a system of uniformity with respect to merchants and traders, the constitution of the United States took from the individual states all power on this subject, and gave it to the general government. The states were left in possession of the power to pass insolvent laws. But as to the bankrupt system, when Congress legislated on that subject, the states ceased to have power except so far as that law gives it.

The *first* section, considering the extended situation of our country, and the relative situation of the several states, adopted a reasonable and wise limitation in point of time, viz. six months to prosecute a commission of bankruptcy; more time might have been oppressive to the debtor, less might have been injurious to the distant creditors.

No man can make himself a bankrupt. Hence it is obvious, that if none of his creditors prosecuted a commission of bankruptcy, a debtor, against the principles of humanity and the general sentiment of this country, might be imprisoned for life; and this gave rise to the provisions of the *sixty-first* section.

But "it is necessary that this section should be so construed as to repeal the provisions of the first, *quoad* debtors lying in gaol for three months."

I am of opinion it does not, and that the policy of this section was to compel the creditors to sue out a commission within the time prescribed, or if they did not, the debtor might avail himself of a state insolvent law. Congress did not legislate with a view to the local laws of any state. Some states have permanent insolvent laws, others have annual ones, but

none of them admit a debtor to be finally liberated in less than three months proceedings; and there is a great difference between imprisonment for life, and imprisonment until an annual session of a legislature takes place next after creditors shall have for six months failed to prosecute a commission.

Under my ideas of the bankrupt law, if a debtor be imprisoned for three months, and no commission is sued out by his creditors, he may apply for the benefit of an insolvent law, and if the commission is not sued in six months, may have full benefit of the insolvent law; but if after his application, and within six months after the act of bankruptcy committed, his creditors sue out a commission, it draws the transaction from state cognizance to the forum, where the constitution and the law of congress place it, and precludes state relief.

This construction gives efficacy and consistency to the *first* and *sixty-first* sections. It prevents the clashing of the general government and state jurisdictions, and enables the debtor if he has acted honestly and fairly to have the full benefit of the bankrupt law.

If three months imprisonment, as has been contended, ousts the operation of the bankrupt law, remote creditors would be defeated of its provisions. All and every creditor is entitled to make his debtor (if a merchant or trader and committing an act of bankruptcy,) a bankrupt. Now a creditor cannot know that his debtor will remain in gaol two full months, and until that event takes place no act of bankruptcy is committed. If then the bankrupt law ceases to operate after an imprisonment of three months, then there is but one month allowed in *Maine or Massachusetts* to prosecute a commission of bankruptcy against his debtor in *Savannah or the Natchez*. Creditors in the neighbourhood may do it, but as all are to have an equal right, I cannot lessen the express limitation of the *first* section by a forced construction of the *sixty-first* section.

Again—if at the end of three months imprisonment the bankrupt law ceases to operate on a debtor, it is

against the express provisions of the *first* section, and precludes distant creditors, in remote states, from making their debtors *bankrupts,* and draws their business into state courts, and makes their property in debts liable to state regulations, against the constitution of the United States, which gives to them federal tribunals for the determination of their rights: a construction that draws these consequences must not be by implication; it should be imperative and unavoidable, which does not exist in this case.

These are the reasons which influence my opinion, drawn amidst the hurry of incessant engagements.