## SUSIE R. DEVER,

### EXECUTRIX OF SYLVESTER A. SILVER, DECEASED

*vs.*

## HOWARD C. SILVER.

*Note Under Seal—Non Est Factum—Consideration.*

The plea of *non est factum* in a suit on a promissory note under seal imposes upon the plaintiff the onus of proving the signing, sealing and delivery of the note.                p. 360

The plaintiff's possession and production of the note, in the absence of testimony to the contrary, is *prima facie* evidence of the delivery thereof.                p. 361

The seal upon a promissory note, considered as a specialty, imports a consideration, and in the absence of proof on the part of the obligor of a want of consideration would, upon such a defense, entitle the obligee to a verdict; and should the note, under the Negotiable Instruments Act of this State, be regarded as a negotiable instrument, to be treated as such in respect to the question of consideration, the burden of proof is on the defendant to show that there was a failure or want of consideration.                pp. 362, 363

*Decided December 9th, 1919.*

Appeal from the Baltimore City Court (SOPER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Joseph S. Goldsmith* and *Harry S. Carver,* for the appellant.

*Albert S. J. Owens,* with whom was *E. L. Stinchcomb* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellee against the appellant, as executrix of Sylvester A. Silver, deceased, upon the following note, dated October 10th, 1914:

> "Four months after date I promise to pay to the order of Howard C. Silver three thousand dollars. Value received.
>
> > "Sylvester A. Silver.   (Seal)"

The suit thereon was instituted on the 5th day of December, 1917. As originally filed, the declaration consisted of the common counts only, but on the 22nd day of April, 1918, it was amended by striking out those counts and inserting in lieu thereof a special count upon said note.

The defendant on May 17th, 1918, filed her plea thereto alleging therein:

> "That the writing obligatory in the plaintiff's amended declaration mentioned is not the deed of the defendant's testator."

She thereafter filed in addition thereto the two following pleas:

> "2.   That there never was any value or consideration for the execution and delivery or payment by the defendant's testator of the said alleged writing obligatory in the plaintiff's amended declaration mentioned.
>
> "3.   That after the execution and delivery of the said alleged writing obligatory in the plaintiff's amended declaration mentioned the same was, without the consent of the defendant's testator, materially altered— that is to say, by adding after the signature thereof a seal or a scroll containing the word 'seal.' "

These pleas of the defendant were traversed by the plaintiff and a joinder of issue short thereon was entered upon the docket. The case was then tried upon the issues joined and a verdict was rendered for the plaintiff for the sum of

$3,748.50, upon which a judgment was entered in favor of the plaintiff for said amount.

The only exception before us is to the action of the Court in refusing to grant the defendant's prayer asking that the case be taken from the jury because of a want of legally sufficient evidence entitling the plaintiff to recover.

Harry Ames Silver, a brother of both the plaintiff and defendant, who was shown the note and the signature thereto, testified that the signature was his father's, that in it he recognized his father's handwriting. He was then asked, "What do you know, if anything, about the indebtedness existing between your father and your brother Howard? A. Well, I knew it for the last twenty years that my brother loaned my father money to help put a house and barn there. Q. You say that you know about your father's indebtedness to your brother? A. I knowed it for the last twenty years. I saw the notes myself, that he gave to my brother. Q. The original note you are talking about? A. The original notes that he gave to him for the money he had loaned him."

J. Clinton Watts, an acquaintance of Dr. Silver, who was shown the note upon which this action was brought, testified that "he thought the said note had been made out in his office, and that he had seen it before Mr. Silver signed it; and that the seal was placed upon said note, in his presence, in his office when it was made out and before it was signed by Mr. Silver; that the seal was placed upon the said note at his suggestion; that Dr. Silver stopped in his office one day and told him that he had a claim against his father and that he thought he would get a new note for it; that they got talking about his father's age, and witness suggested to him that he get a new note under seal; that after it was signed the Doctor stepped into his office one day and told him that he had the note signed and took him out and showed it to him."

Upon cross-examination he stated that the plaintiff "brought the note in one day and showed it to me and said 'my father

signed this.' He said he met him in the Union Station and he signed the note in the Union Station, and that is the last I know of it until the thing came up for trial."

Daniel H. Carroll, when called as a witness for the defendant, testified that on January 9th, 1917, he was Deputy Register of Wills for Harford County; that on that day Dr. Silver came to Belair with the witness Watts and filed the note as a claim against the estate of Sylvester A. Silver, deceased, and witness stamped it in the name of the Register of Wills, as a properly proven claim. He testified at this time that "there was not a seal upon the said note."

Joseph S. Goldsmith, one of the attorneys of the defendant, testified that Mr. Owens, counsel for the plaintiff, stated when he asked permission of the Court to amend his declaration that when he drafted the original declaration he did not notice any seal upon the note and that "he then saw there was a seal upon it, and he desired to amend the declaration so as to make it applicable to a sealed instrument."

The defendant, Susie R. Dever, testified that her father at the time of his death, November 15th, 1916, owned a farm in Harford County, on which he lived; that he was eighty-four years of age when the note was signed; and that for several months immediately preceding that day, he had been in Baltimore, and at four o'clock on that day, he left Union Station to attend the funeral of a sister in Harford County. "The witness was then asked whether she had had, since the death of her father, any conversation with the plaintiff in reference to the promissory note on account of which this suit was instituted." The witness stated that she met the plaintiff on November 21st or 22nd, 1916, five or six days after her father's death, at the Second National Bank of Baltimore. She had gone there to investigate the note, as she said, and while there saw her brother, the plaintiff. She spoke to him and a conversation followed, most of which we will not repeat, as we think it can serve no good purpose in doing so. But in this conversation she told him she was

there on her father's business; that he sent her "to investigate that note." She said, "you told papa that you had deposited the note in the Second National Bank as collateral and he sent me here after it. The matter of fact and the truth of it is you have not done it, as I have found out." The plaintiff then told her that she knew that his father owed him that money and witness told him that he, her father, did not owe it and that he was not going to get it, and asked him why he had not come out in the open when he got his father to sign the note, saying that he did not know what he was signing, and if he had he would never have signed it. The plaintiff then asked her how she knew, as she was not there, and she said, "No, I was not there, but he told me how and where and all about it, how it was signed and I can believe him." She further testified that he said to her that he had the note and would turn it over to her, as executrix of his father, but she said, "No, you will file and prove that note through the Orphans' Court in Belair."

Harry Silver, a nephew and son-in-law of Sylvester A. Silver, testified that he escorted his uncle from the home of Harry Silver, the decedent's son, to Union Station, and when he arrived at the station, he left him "in one of the corridors and went to buy a ticket, and after buying the ticket, returned to him; he did not know that anybody acquainted with the testator was with him in Union Station; that he did not see the plaintiff in the station and had not seen him at all on that day; that after rejoining the testator, he went to the train and left the city for Aberdeen" to attend the funeral.

J. Clinton Watts, when called in rebuttal, testified that he went with the plaintiff to Bel Air on the occasion that he filed the note with the Register of Wills of Harford County, and that he saw the note at that time, and that the seal was then on the note.

The plaintiff testified that Watts was with him when he filed the note at Bel Air, and that "the said note was at that time in the shape in which it was when exhibited in Court."

He also testified that upon the occasion when he met his sister in the bank, he had the note in his pocket; that he took the note from his pocket and showed it to her; that she said, "you even have a witness on it"; and he denied what she said as to his being educated by his father.

The wife of the plaintiff, Mary McComas Silver, also testified that she saw the note before it was filed in the Orphans' Court at Bel Air. She saw it when he brought it home after his father had signed it; that at such time he showed it to her and the seal was then upon it.

George I. Way testified that he accompanied Dr. Silver and Mr. Watts to Bel Air on the occasion that the note was filed with the Register of Wills of Harford County; that he saw the note at such time and the seal was upon it. He also testified that he had seen it before; that on one occasion Dr. Silver took it from his pocket and showed it to him.

When asked upon cross-examination why he showed it to him, he said: "I do not know of any other reasons than Dr. Silver and I have been friends for a good many years, and knew his father and the family, and know how he has helped · his father along, and taking these notes from his father, and no special reason for showing it." It was shown to him at his place of business. He was at that time in the drug business.

The defendant's plea of *non est factum* imposed on the plaintiff the *onus* of proving the signing, sealing and delivery of the note to which the plea was interposed; these three facts constituted the affirmative of the issue. *Edelin* v. *Gough,* 5 Gill, 103; *Edelin* v. *Sanders,* 8 Md. 118; *Keedy* v. *Moats,* 72 Md. 325.

That the note was signed by Sylvester A. Silver is not only shown by the evidence of his son, Harry Silver, who testified that he was familiar with the handwriting of his father and that his name to the note was signed by him, but it is also shown by the evidence of the defendant herself that the note was signed and given by the father to the plaintiff, for as she

says, her father spoke to her about it and asked her to investigate it, and there is no evidence whatever that it was not signed by him. The note was in the possession of the plaintiff and produced by him after the death of the maker, his father. His possession and production of the note by him, in the absence of testimony to the contrary, was *prima facie* evidence of the delivery thereof. *Engler* v. *Peoples Fire Ins. Co.,* 46 Md. 322; *Clarke* v. *Ray,* 1 H. & J. 318.

As to the sealing of said note, there is evidence not only tending to show that it was sealed but such evidence largely preponderates over the evidence offered by the defendant that it was not sealed. Watts, Way, and the wife of the plaintiff testified that they saw the note shortly after it was said to have been signed by the decedent, and that the seal was then upon the note. Watts and Way again saw it at the time it was filed in the office of the Register of Wills of Harford County, and they again saw that the seal was upon the note; and the plaintiff likewise testified that at such time the seal was upon the note. The fact that the seal was upon it when shown to Watts shortly after it was signed was impressed upon his mind because, as he says, it was by his suggestion that the seal was placed there, and of course if this be true, it was but natural for him to observe whether or not the note had the seal upon it, and he says it had.

Practically the only evidence that the seal was not upon the note at the time it was left with the Register of Wills of Harford County was the testimony of the Deputy Register of Wills, Daniel H. Carroll. He said at such time the seal was not upon the note. The note was with him only for the time required of him to stamp it in the name, as he says, of the register of wills of that county, when it was returned to the plaintiff. This was several years before he was called upon to testify in the case.

Upon cross-examination, he said he could not say how many claims were passed for payment by the Register of Wills of Harford County in the course of a year. "It might

be a thousand or it might be hundreds; that he looked at the note particularly and that the doctor and he talked about it and also the gentleman with him (J. Clinton Watts)." He stated, however, that nothing was said about the seal, whether it was or it was not upon the note, and that he never saw the note again until exhibited to him while he was testifying. The evidence, to say the least, was certainly legally sufficient to go to the jury as tending to show the signing, sealing and delivery of the note.

The defense of a failure or want of consideration is made by the defendant's second plea, to the correctness of which no question is raised. The seal upon the note when considered as a specialty, imports a consideration, and in the absence of all proof on the part of the obligor of a want of consideration, would, upon such defense, entitle the obligee to a verdict; and should the note, under the Negotiable Instrument Act of this State, be regarded as a negotiable instrument, to be treated as such in respect to the question before us, then it is we think clearly established in this State that under such Act the burden of proof was on the defendant to show that there was a failure or want of consideration.

In *Eckels* v. *Cornell's Economizer Co.,* 119 Md. 117, where the suit was brought upon a negotiable promissory note and where a similar defense was made, JUDGE PEARCE, in delivering the opinion of the Court, said: "The burden of proof was on the defendant to show there was a failure of consideration. This is the general doctrine (8 *Cyc.* 225), and the rule in this State." *Ingersoll* v. *Martin,* 58 Md. 67.

CHIEF JUDGE BOYD, speaking for the Court in *Shaffer* v. *Bond,* 129 Md. 657, said: "In 8 *Cyc.* 225, referred to by JUDGE PEARCE, in *Eckels* v. *Cornell's Economizer Co., supra,* we find the following statement, being in the Article on Commercial Papers: "Want, failure or illegality of consideration. The defendant who sets up any of the aforegoing defenses has the burden of proving the want, failure or illegality of consideration. The presumption of a valid consideration

must be met by proof and mere denial by averment in the answer is in general not sufficient to rebut the presumption.' In 8 *C. J.,* section 1299, page 994, it is said: 'It is a general rule, supported by a multitude of decisions, that the burden of proof is on defendant to establish a defense of want, failure or illegality of consideration.' " And then, after a very able and full discussion of the law as to the burden of proof in such cases, JUDGE BOYD proceeded to say, "so far as the defense of failure of consideration is concerned, *Eckels case, supra,* is conclusive, and it is in accord with what we understand to be the practice in this State. It does not seem to us that there can be any valid reason for holding the contrary view, under our practice. It is an affirmative defense, and must be proven by the defendant and sustained by him throughout, if he relies on it."

It is said in *Eaton and Gilbert on Commercial Paper,* page 301: "The Negotiable Instruments Law provides that, 'every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.' This seems to be a statutory declaration of the general rule that contracts under seal or executed pursuant to a statute, promissory notes, and inland bills of exchange enjoy a privilege not conceded to other instruments, of being presumed to be founded upon a valuable consideration," and "where there is a presumption of consideration, or where the consideration is expressed, the burden of proving want, failure or illegality of consideration is upon the defendant."

There was without doubt evidence in this case legally sufficient to go to the jury, as tending to establish the claim of the plaintiff, and the Court acted properly in refusing to grant the defendant's prayer. The judgment will, therefore, be affirmed.

*Judgment affirmed, with costs.*