## Williams et al. v. Balmut

Oct. 3, 1944.

David C. Hunter, I. Jay Miller and Matt T. Blackard for appellants.

Keenon & Odear for appellee.

Opinion of the Court by Van Sant, Commissioner
—Affirming.

Charles Balmut and his wife, Louise Balmut, were injured when their car, being driven by Mr. Balmut at a moderate rate of speed, was struck by a truck owned by appellant, Black Star Coal Company, and being operated by its agent, employee, and coappellant, Lucian Williams, at a speed of approximately 75 miles per hour. The Balmuts were traveling in an easterly direction, Williams in a westerly direction; the collision occurred on the south (Balmut's) lane of U. S. Highway No. 60 in Woodford County, between Frankfort and Versailles.

The opinion on the appeal in Mr. Balmut's case, simultaneously rendered with this opinion, is styled Lucian Williams et al. v. Charles Balmut, and is published in 298 Ky. 245, 182 S. W. 2d 779. Mrs. Balmut instituted this action against appellants. Upon her death before trial, the action was revived in the name of her husband, as administrator of her estate. The administrator recovered judgment, based upon a verdict in the amount of $3,166.28. Reversal is sought on the grounds, (1) that the award for damages is excessive; (2) the Court admitted incompetent evidence introduced by the administrator over the objection of appellants; and (3) the Court erred in instructing the jury.

Although Mrs. Balmut died one year and five days after the accident, it is not claimed that her death was produced by the injuries she received in the accident. Damages were sought for pain and suffering, and for medical expense; including doctors', hospital, and nurses' bills. The sum total of the special damages permitted under the instructions is $166.28. Deducting that amount from the verdict, it is obvious the jury considered Mrs. Balmut to have been damaged by personal injuries in the amount of $3,000; therefore, that is the amount we must consider in determining whether the verdict was excessive.

Four doctors testified for appellee; no medical testimony was introduced by appellants. Each of the doctors stated that, in his opinion, disability from the injuries would not be permanent. The accident occurred on March 5, 1942. Mrs. Balmut was immediately removed to a hospital in Versailles, where she was attended by Dr. S. A. Blackburn. Dr. Blackburn testified that

she was suffering a "vast amount" of pain in her left side and in one of her wrists. He found several bruises on the left arm and leg. He could not make an X-ray examination that day, because of the shock to which the patient had been subjected; but was of the opinion, based upon the intensity of the pain, that an injury had occurred to the ribs on the left side. She remained in the hospital at Versailles approximately two days, and was removed to St. Joseph's Hospital in Lexington, where she was attended by Dr. Barrow, who did not testify in the case. Dr. D. B. Harding, the X-ray specialist at St. Joseph's Hospital, reported that the X-ray pictures which he took showed there were multiple fractured ribs in the lateral portion of the left lower chest, but that none of the fragments showed displacement; there was a fracture of the distal end of the radius in the right wrist, with no displacement of the fragments. She was attended by Dr. Edward O. Guerrant four weeks after the accident, at which time she was confined to bed in her residence. He testified she was suffering with pain in the left chest, due to the fractured ribs; the discomfort was so great that it limited her movements, and she was able to roll from side to side only with great pain. She was suffering pain in her right arm, which was in a plaster splint; there was swelling, tenderness, and deformity at the right wrist. Subjective symptoms indicated soreness in her back, shoulders, and neck, and she complained of having headaches. She suffered a great part of the day and night, and to such an extent that it was necessary for her to remain in bed. His next visit was a week or ten days later, at which time she was still suffering great pain in the left chest; however, it was less intense than on the occasion of his first visit. The splint on the right wrist had been removed; there was pain, swelling, and limitation of motion in the wrist. She was still suffering from soreness in her back, shoulders, and neck; the pain was still sufficient to cause her "a great deal of discomfort". Dr. Guerrant testified that the patient visited him at his office twice in the ten days preceding the taking of his deposition, which was on the 27th day of May, 1942, about twelve weeks after the accident. On both occasions she was still suffering from soreness in her back, shoulders, neck, and wrist, with some loss of function of the right arm in the region of the wrist. He testified that he expected her to be disabled for several months

after that date, and that it would be impossible to say whether she would have complete recovery. Dr. Franklin Jelsma examined Mrs. Balmut on September 8, 1942 and September 29, 1942, and gave his depostion October 22, 1942. The history and subjective symptoms related to him by Mrs. Balmut were essentially those related by the doctors whose testimony hereinbefore has been discussed. He found tenderness on pressure over the left side of the neck, on the nerves that go from the spine to the shoulder and arm, and pain when the left arm was raised above the head; turning the head caused pain, and there was weakness in the left arm, numbness in the fingers. He was of the opinion that she had an involvement of the nerves on the left side of the neck, causing traumatic neuritis. She had a dizziness, which was obvious from objective indications, and manifested an irritation of the balancing mechanism at the base of the brain. He made the following answer to the following question:

"Q. To what extent would you say she was disabled from going about her normal life and household duties? A. She was suffering pain and nervousness and loss of sleep and those things prevented her from going about and doing her usual duties and caused an irritability, abnormal reaction to things she wouldn't have otherwise."

He stated that it was possible the patient would have to have an operation to free the nerves of their involvement. Mrs. Balmut's two daughters and her husband testified that she suffered great pain continuously from the date of the injury to her death, which occurred March 10, 1943. There was no contradiction of any of the testimony recited above.

It is difficult to set a standard by which damages for pain and suffering are to be gauged; each case must be considered in relation to the facts and circumstances peculiarly its own. The victim of this tragedy was a woman of middle age, who, as a result of the negligence of appellants, underwent, it seems to us, excruciating pain for a period of a year. Certainly, for that period of time she suffered so severely as to be unable to engage in her usual and customary pursuits. There was evidence that she was afflicted with arthritis; but such affliction was not responsible for any of the symptoms related by the doctors, or complained of by the patient.

In City of Covington v. Lovelace, 243 Ky. 627, 49 S. W. 2d 593, 595, no medical testimony was introduced, but lay witnesses testified that the plaintiff had been unable to work since the accident; was extremely nervous; complained of her back and wrist; could not dress herself; and had lost sleep because of her nervous condition. That condition had persisted for three years after the accident. This evidence was not substantiated by the findings of physicians, nor did the pain and suffering, as related by the lay witnesses, appear to be as severe as in the instant case. The Court upheld a verdict of $3,000, and, in quoting from Gnau v. Ackerman, 166 Ky. 258, 179 S. W. 217, the writer of the opinion said: " 'Reasonable compensation for an injury like this it is not possible to determine with mathematical accuracy, or, indeed, with even reasonable accuracy. No rule has ever been or ever can be laid down by which the damages allowable in personal injury cases may be carefully measured or computed. The best that can be done under these circumstances is to leave what is fair and right to the judgment and discretion of the 12 men who compose the jury, and their judgment and discretion we are not authorized to, and will not, interfere with, unless it appears that their assessment was influenced by passion or prejudice or is so unreasonable as to appear at first blush entirely disproportionate to the injuries sustained.' "

In Columbia Amusement Co. v. Rye, 288 Ky. 179, 155 S. W. 2d 727, we upheld a verdict of $5,000, where the injury incurred was a fractured pelvis, which fracture knitted satisfactorily, caused no shortness of the leg, or permanent disability. The award was upheld, as reasonable compensation for physical and mental pain and suffering. The rule adopted by this Court as early as 1875, in Louisville & N. R. R. Co. v. Fox, 74 Ky. 495, 11 Bush 495, at pages 509 and 510, has been consistently followed, and is: "There is no certain fixed criterion in a case like this by which either the court or jury can ascertain with certainty the amount which will be a fair compensation for the injuries complained of, and considerable reliance must therefore be placed on the good sense and sound judgment of the jury, and it is only when the amount of the verdict, when compared with the injuries to be compensated for, is so great that in the opinion of the court it can not be accounted for upon any other ground, that the court will be justified in attributing it to passion or prejudice."

In this case, in the light of the opinions above cited, the jury was not without reasonable grounds in determining that $3,000 was just compensation for the pain and suffering endured by Mrs. Balmut as a result of the negligence of appellants. Therefore, the judgment cannot be reversed on the ground that the verdict was excessive.

It is next claimed that the Court erred in permitting Mr. Balmut to testify that his wife's nurses' bills from the time of the accident to her death amounted to around $1,000. It is contended that this evidence was incompetent, under Subsection 2 of Section 606 of the Civil Code of Practice; and that there was no proof that the nursing bills were occasioned by the injuries sustained in the accident. Mr. Balmut testified that he paid his wife's nurses' bills; this, then, was not a transaction had with his wife, nor any act done by the wife, who is the deceased in this instance; it was a transaction between him and the nurses, and the evidence did not contravene the provisions of Subsection 2 of Section 606, Civil Code of Practice. The contention that it was not shown that the expense for nursing was incurred for injuries sustained in the accident is without merit. The answer complained of was elicited from the witness after bitter haranguing by the attorneys over the competency of the original question in respect to the cost of nursing, which was in the following words: "Mr. Balmut, do you know how much you paid out for nurses for yourself and wife as a result of this accident?".

The effect of the final answer was that, in his best judgment, he paid around a thousand dollars for nurses for his wife as a result of the injuries caused by the accident. The evidence was competent in support of the allegation and prayer for special damages for nursing bills (but which was not submitted to the jury), and in proof of the allegation of pain and suffering, and to which the consideration of the jury was limited by admonition of the Court.

Two complaints are made in respect to the instructions. The first is in respect to the phrasing of Instruction No. 3, which was the instruction on the measure of damages. The part of the instruction pertinent to the question raised is in the following words: "If you find for the plaintiff under Instruction No. 1 or No. 2 and you further find from the evidence that her injuries are not

permanent, then you will award her such sum in damages as will fairly and reasonably compensate her for etc.''

The objection to the instruction is that the Court should not have mentioned either the permanent or temporary character of the injuries; because, since the Court permitted them to find that the injuries were not permanent, the jury might have determined that they were likewise permitted to find that the injuries were permanent. We find no merit in this contention. The jury, by following the instructions, could not have determined that the injuries were permanent; therefore, it was not prejudicial for the Court to submit the question of temporary injury to them, since that character of injury is all for which, under the instructions, they were permitted to award damages. It was conclusively proved that Mrs. Balmut was injured; and the award for damages was confined to compensation for pain and suffering and special damages shown by the evidence. That is the correct measure for temporary injuries.

The other complaint in respect to the instructions involves alleged error of the Court in failing to give the proper converse in the instruction permitting the jury to find for appellee; and is the same complaint made by appellant in the companion case first herein referred to. For the reasons recited in the opinion in that case, appellants' contention must be rejected.

The judgment is affirmed.