RIDGLEY, Executor *v.* BEATTY

[No. 136, September Term, 1959.]

78

*Decided March 17, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Lewin Wethered* and *James C. L. Anderson,* for appellant.

*Robert C. Prem,* with whom were *Thomas J. Grogan, Jr.,* and *Robert Paul Mann* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

When Warren H. Ridgley, executor of the estate of Johanna W. Scheufele, deceased, disputed a promissory note given by the decedent to a son-in-law, Joseph R. Beatty (Beatty or claimant), who had rendered financial assistance to his mother-in-law for more than four years, the claimant filed suit against the estate. The motion for summary judgment filed with the declaration was not pressed and the trial of the case before a jury on the merits resulted in a verdict of $3200 (the face of the note) for the claimant. From the judgment absolute entered by the Circuit Court for Baltimore County on the verdict, the executor appealed, claiming lack of consideration and errors in certain rulings on the evidence and in the instructions to the jury. The executor as well as the claimant was also a son-in-law of the deceased.

In July of 1950, the decedent requested Beatty and his family—consisting of his wife, his three children and his mother—to give up his home and move in with her. With the exception of Beatty's mother, who died four months earlier, all of them remained in the home of the decedent until her death in December of 1954. When the move was made the decedent was then 76 years of age. For several years, because of illness, she had been unable to practice practical nursing or faith healing which had been her sources of income, and what she had saved was nearly exhausted. Moreover, prior to the move the deceased had suffered a slight stroke which affected the use of her right arm and hand. Bernard Scheufele, a son of the decedent, who had previously lived with his mother and continued to do so, was unable to work at the time and was thus prevented from aiding her financially. It appears that the only person who was willing or financially able to take care of the decedent was her son-in-law, Beatty, and he proceeded to do so for the remaining years of her life.

Witnesses produced on behalf of the claimant testified that the decedent intended that he should be reimbursed for the

moneys he had expended for her at her request. One of them—the wife of the claimant (and a daughter of the decedent)—testified that it was understood that if her husband would pay the mortgage, the decedent would see that he was repaid, but on cross-examination, for some reason, after positively denying that payments on the mortgage were in lieu of rent, she finally admitted that they were. In addition to making the mortgage payments, the husband also paid, according to the wife, hospital and doctor bills and had purchased food and medicines for the deceased. Another witness—Elizabeth F. Scheufele—a daughter-in-law of the decedent—also testified that her mother-in-law, who wanted "to spend the rest of her days in her home," had told the witness and her husband (another ill son of the decedent) that the claimant was taking care of all the bills, including her household and personal expenses and the mortgage on the house, that he would receive everything back at her death and that she had signed a note for him which "would take care of everything he had done for her." The executor claimed that the note had been procured by Beatty with the aid of a disbarred lawyer at a time when the maker of the note was partially paralyzed.

The note was dated May 18, 1954. It was for the sum of $3200 and was payable to Beatty on demand. On the note the decedent had made an "x-mark" to represent her signature. The mark was witnessed by the claimant's wife and the lawyer, who had filled in the note on a printed form. Several days later the maker of the note also executed a will. By the will she directed the payment of her just debts and funeral expenses and an equal division of the rest and residue of her estate among her eleven children.

The executor contends (i) that it was error for the trial court to allow the claimant—allegedly in violation of the so-called "dead man's statute"—to introduce evidence with respect to the giving of certain checks, and the making of certain cash payments to third persons; (ii) that it was error to allow the claimant and his wife to testify as to their care of the claimant's mother; (iii) that (a) there was no legally admissible evidence to support a consideration for the note and (b) that the court erred when it failed to instruct the jury

with respect to a claimed partial failure of consideration; and (iv) that the court also erred when it refused to instruct the jury as to a claimed "confidential relationship." We shall consider each of the questions separately and, in so doing, shall relate such additional facts, including trial procedures, as may appear to be necessary or desirable.

(i)

Code (1957), Art. 35, sec. 3, provides in pertinent part that:

> "In actions or proceedings by or against executors [or] administrators * * * of a decedent as such, in which judgments or decrees may be rendered for or against them, * * * no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator [or] intestate ancestor, * * * either personally or through an agent since dead, * * * unless called to testify by the opposite party."

In the instant case the claimant, over the objection of the executor, was allowed to testify as to some sixty checks given by the claimant to third persons during the period of time when he and his family resided with the decedent. The checks represented payments which had been made on the mortgage and expenditures for coal, electricity, telephone, taxes, legal expenses and hospital bills. The court permitted the claimant to identify each check, describe it and to state the item for which the check was given, but it would not permit him to connect such payments with any "agreement or understanding or transaction" the claimant had with the decedent. The court also permitted the claimant to testify to several cash payments made by him for household expenses. The executor claims that this was error. He contends that the only relevance of the "payments" to the issue was to show a consideration for the note and that as such they were evidence of an agreement between the claimant and the decedent and were therefore barred by the statute. We do not agree.

There is no doubt, of course, that the death of the decedent

rendered the claimant incompetent to testify as to certain matters concerning the making of the promissory note, but the statute does not go so far as to render a party within its terms absolutely incompetent as a witness; nor does the statute render any evidence as such incompetent. Instead it merely precludes proof of "transactions had with" or "statements made by" the decedent. Thus, in order to exclude evidence otherwise admissible because it is incompetent, the fundamental features of the statute must coincide. In other words, besides there being a witness whom the statute renders incompetent (the claimant in this case) and a protected party against whom the testimony is offered (the executor in this case), there must also be such testimony as is prohibited by the statute. That, in this case, would be only such testimony as related to transactions had with the decedent and no other. Obviously, neither the giving of the checks, nor the making of cash payments, constituted a direct transaction with the decedent. Thus it appears, since all of the statutory conditions did not concur, that the trial court was correct when it refused to exclude the testimony. The particular question presented is novel to this Court, but there have been decisions on similar questions in other jurisdictions. For instance, in *Sager v. Dorr*, 51 Hun. (N. Y.) 642, 4 N. Y. S. 568 (1889), in which the claimant testified that she had paid for meat, flour, and other family supplies, and that no other person had paid for them, it was held—because the testimony seemed to signify that the claimant had paid for the supplies personally and not through the deceased as her agent—that the "transaction was between herself and the tradesmen, and not between her and the deceased," and was not therefore obnoxious. Likewise, in *Williams v. Balmut*, 298 Ky. 249, 182 S. W. 2d 779 (1944), it was held that the testimony by a husband that he had paid the nursing bills for his wife, who had died, did not contravene the statute since such payment was a transaction between him and the nurses and "was not a transaction had with his wife, nor any act done by his wife." See also *Herbert v. Lankershim*, 9 Cal. 2d 409, 71 P. 2d 220 (1937), where, although the judgment was reversed for another reason, the claimant was allowed to *identify* a $500,000 promissory note

—given to her by a wealthy decedent in his life time in consideration of her "loving kindness and protection"—as the note described in the pleadings. She was also permitted to testify that she had presented a claim on it which had not been paid though the statutory provision prohibited her from testifying "as to any matter or fact occurring before the death of such deceased person."

In *Hollister v. Fiedler*, 17 N. J. 239, 111 A. 2d 57 (1955), it was held that a proper test for determining what is a "transaction with" a decedent in the statutory sense was: "Whether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge." That test applied to the testimony in this case—limited as it was to checks given and cash paid by the claimant to third persons—would have impelled a holding that the decedent, if living, could not of her own knowledge have contradicted the witness. We hold that the evidence was not barred by the statute and was therefore properly admitted.

(ii)

The claim here is that it was error to allow the claimant and his wife to testify, over objection, as to their care of *his* mother. The testimony objected to was to the effect that the claimant's eighty year old mother was more of an invalid than was his mother-in-law, that his mother required special attention before and after the move had been made, that the attention she needed was provided by his wife and that his mother's drugs and medicines cost approximately $20 to $25 a week. This Court is told that the admission of this testimony was erroneous because it was calculated to prejudice the jury in favor of the claimant and his wife as dutiful children to their aged parents. On the other hand, the claimant insists that the testimony was relevant because a showing of the added burden of caring for two elderly women tended to corroborate the testimony that the deceased had intended to repay the claimant for his financial assistance to her. We are not impressed with the logic of either claim. The relevancy of the testimony was tenuous indeed, and perhaps it should have been excluded when the objection to it was made, but it is

difficult to see how it was prejudicial error to admit it. We think the error—assuming it to be one—was harmless and one not requiring a reversal.

### (iii)

This contention, concerning as it does consideration for the note or the lack of it, raises not only a question as to the complete failure of evidence to support a consideration, but also a question as to the alleged failure of the court to instruct the jury with respect to an asserted partial failure of consideration. Both aspects of this double-barreled contention are without merit. As to the first point, the executor seems to have overlooked the fact that the prima facie presumption that every negotiable promissory note is deemed to have been issued for a valuable consideration and that every person whose signature appears thereon is presumed to have become a party thereto for value. Code (1957), Art. 13, sec. 45. It was for these reasons—as the trial court properly instructed the jury —that the admission of the note into evidence, after proof of the "signature" of the maker thereof, had the effect of shifting the burden of proof from the claimant to the executor to show that there was a failure or want of consideration. *Dever v. Silver,* 135 Md. 355, 109 Atl. 67 (1919). Moreover, the fact that the claimant produced evidence of a valuable consideration as a part of his case in chief, did not affect the prima facie presumption in favor of the claimant. *Citizens Nat'l Bank v. Custis,* 155 Md. 173, 141 Atl. 556 (1928). The burden was still on the executor to show a lack of consideration and he failed to do so. Other than the conflict in the wife's testimony on cross-examination to the effect that payments on the mortgage were in lieu of rent, there is nothing in the record to indicate or even suggest that it was not the intention of the deceased to reimburse the claimant for his expenditures. On the other hand there was strong positive evidence to the contrary. Nor is there anything in the record to indicate that the note had been procured by fraud or duress other than a claim that the note had been obtained with the aid of a disbarred lawyer. The weight of the evidence and the credit to be given to the witnesses were matters for the jury to determine.

When the question of the presence or absence of a valuable consideration for the note was fairly submitted to the jury in the instructions as to the law, including the effect of fraud and duress (but not a confidential relationship) should there be either, the jury returned a verdict in favor of the claimant.

The second point concerns the alleged failure to instruct the jury as to a partial failure of consideration. It is obviously based on the admission of the claimant's wife on cross-examination that the payments made by her husband on account of the mortgage were in lieu of his paying rent to his mother-in-law for the use of her home as a place of abode for himself and his family. This is not properly before us on this appeal. It is true the executor seasonably objected, in accordance with the requirement of Maryland Rule 554 e, to the failure of the trial court to adequately instruct the jury with respect to what would constitute failure of ·consideration generally. That timely objection afforded the court an opportunity to add matters erroneously omitted from its original instructions, but at no time was there a specific request for an instruction with respect to a partial failure of consideration. Nor did the executor object that the trial court had omitted any reference to partial failure of consideration in the amended instruction. Since Rule 554 is equally applicable to amended and original instructions, a litigant must comply with the requirements of the rule at every stage of the instructions in order to preserve his right to review on appeal. *Casey v. Roman Catholic Archbishop*, 217 Md. 595, 143 A. 2d 627 (1958). See also *Belt's Wharf Warehouses v. International Products Corp.*, 213 Md. 585, 132 A. 2d 588 (1957).

(iv)

The claim here is that it was error for the trial court to refuse to instruct the jury that a confidential relationship actually existed between the claimant and the deceased. We disagree. Whether or not the executor was entitled to request an instruction with respect to a confidential relationship is by no means certain. Ordinarily, the abuse of such a relationship would constitute a ground for the cancellation or reformation of a deed or other form of contract in a court of equity.

It may be the abuse of such a relationship could be pleaded as a defense in a suit at law by way of a plea on equitable grounds,[1] but it was not done in this case. If we assume, without deciding, that the existence of such a relationship would be admissible in evidence under the general issue pleas [2] filed in this case and further assume, also without deciding, that there was a confidential relationship between the claimant and the decedent, the burden would then be on the claimant to show the fairness of the transaction. There is, however, nothing in the record to show that the giving of the note was either the result of coercion or that it was improvident. See *Piraino v. Betka,* 218 Md. 548, 147 A. 2d 712 (1959).

The judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*

---

1. Note, however, that a plea on equitable grounds is not good unless it sets up such facts as would entitle a defendant to relief in equity against a judgment if recovered. Rule 342 d 1 (a); *Bond v. Murray,* 118 Md. 445, 84 Atl. 655 (1912); *Williams v. Peters,* 72 Md. 584, 20 Atl. 175 (1890). The rule does not, however, confer upon courts of law the power of cancellation or reformation; nor does it affect the jurisdiction of equity to cancel or reform a deed or contract. See *Conner v. Groh,* 90 Md. 674, 45 Atl. 1024 (1900).

2. See *Restatement of Contracts,* Sec. 497, where the term "confidential relationship" is discussed in comment "a" with relation to duress and undue influence.